AC-1999-11                                          1

EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Eddie Montañez López<br>Ana López Prieto<br>    Apelantes<br><br>       v.<br><br>Universidad de Puerto Rico y otros<br>  Apelados | Apelación<br><br>2002 TSPR 33<br><br>156 DPR \_\_\_\_\_ |

Número del Caso: AC-1999-11


Fecha: 21/marzo/2002


Tribunal de Circuito de Apelaciones:
                    Circuito Regional I


Juez Ponente:
                    Hon. José L. Miranda de Hostos


Abogados de la Parte Apelante:
                    Lcdo. Carlos Martínez Vélez
                    Lcda. Ana López Prieto


Abogada de la Parte Apelada:
                    Lcda. Gladys E. Guemárez



Materia: Daños y Perjuicios



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Eddie Montañez López
Ana López Prieto

    Apelantes

      vs.                                    AC-1999-11

Universidad de Puerto Rico
y otros

    Apelados

Opinión del Tribunal emitida por el Juez Presidente señor Andréu García

San Juan, Puerto Rico, a 21 de marzo de 2002

    Debemos dirimir en esta ocasión cuatro controversias dentro del campo de seguros de responsabilidad pública. Para ello debemos resolver (1) cuál es la responsabilidad de cada una de las aseguradoras de una póliza combinada, bien sean solidarias o por determinados porcentajes o cantidades, cuando una de éstas es declarada insolvente y sustituida por la Asociación de Garantía de Seguros Misceláneos; (2) si la cantidad máxima de $150,000, a la cual viene obligada a responder la Asociación en virtud de las disposiciones del Artículo 38.080 del Código

de Seguros de Puerto Rico, 26 L.P.R.A. § 3808, se refiere a cada reclamación o suceso u ocurrencia que origina diversas reclamaciones y, (3) si los tribunales Puerto Rico tienen facultad para condenar a dicha Asociación al pago de cost intereses por temeridad y, consecuentemente, honorarios de abogado. controversia restante se resuelve aplicando la norma de retroactividad establec por este Tribunal en <u>Nieves Cruz v. Universidad de Puerto Rico,</u> resuelto el 31 mayo de 2000, 2000 TSPR 78.

I

**El codemandante, Eddie Montañez López, tenía 14 años de edad cuando sufrió un accidente mientras corría bicicleta, el 30 de junio de 1984. Aunque inicialmente fue atendido en otras instituciones, una vez el Hospital Universitario se hizo cargo del paciente el mismo día del accidente, toda la atención, diagnóstico y tratamiento del menor estuvo a cargo de los médicos del Hospital Universitario y del Hospital Pediátrico Universitario. El menor estuvo hospitalizado durante 56 días y fue sometido a seis (6) operaciones quirúrgicas. Desarrolló gangrena y para salvar su vida fue necesario amputarle la pierna derecha a nivel de la cadera (desarticulación).**

**Luego de infructuosas negociaciones con la aseguradora, Corporación Insular de Seguros, el 20 de enero de 1989, fue presentada una demanda por impericia médica contra la Universidad de Puerto Rico y su mencionada aseguradora en el entonces Tribunal Superior de Puerto Rico, Sala Superior de San Juan.**

**El 1 de octubre de 1992, el tribunal (Hon. Pedro López Oliver) emitió "sentencia parcial" en la que determinó que la Universidad de Puerto Rico había incurrido en negligencia en el tratamiento del menor codemandante, Eddie Montañez López, y que dicha negligencia tuvo como efecto la desarticulación de la pierna derecha del menor. El dictamen sobre la cuantía de los daños quedó pendiente.**

**La Corporación Insular de Seguros fue declarada insolvente en diciembre de 1992. Como consecuencia de los procedimientos de liquidación de dicha aseguradora se paralizaron todos los procedimientos**

en que ésta era parte. Posteriormente, compareció al litigio la Asociación de Garantía de Seguros Misceláneos para ofrecer representación legal y cubierta a la parte demandada, bajo la póliza que había emitido la Corporación Insular de Seguros y que estaba vigente en la fecha de los hechos.

El 12 de abril de 1994, la Asociación de Garantía de Seguros Misceláneos consignó la suma de ciento cincuenta mil (150,000) dólares y alegó que esa era la cantidad máxima que venía obligada a satisfacer, según lo dispuesto en el Artículo 38.080 del Código de Seguros, 26 L.P.R.A. § 3808.

A partir de ese momento, la controversia en el caso se centró en el monto de la obligación por el cual debía responder la Asociación como sucesora en interés de la Corporación Insular de Seguros, la única aseguradora de la Universidad que fue demandada, por lo cual alegó que sólo respondía hasta el máximo de la suma consignada. No descubrió, sin embargo, al realizar la referida consignación, que la póliza que cubría el evento en cuestión era una combinada, expedida por varias aseguradoras en determinados porcentajes, ni hizo intento alguno para acumular como parte a estas otras aseguradoras.

Mientras tanto, la Legislatura aprobó la Ley Núm. 98 de 24 de agosto de 1994, la cual enmendó el Art. 41.050 del Código de Seguros, 26 L.P.R.A. § 4105, con el fin de incluir a la Universidad de Puerto Rico dentro de los límites de responsabilidad por impericia médico-hospitalaria que impone la Ley Núm. 104 de 29 de junio de 1955, según enmendada, conocida como Ley de Reclamaciones y Demandas contra el Estado, 32 L.P.R.A. § 3077 *et seq*.

El Tribunal dictó resolución el 15 de marzo de 1996 (Hon. Carmen Celinda Ríos) en la que determinó que la responsabilidad de la Asociación de Garantía de Seguros Misceláneos estaba limitada al máximo de ciento cincuenta mil (150,000) dólares por cada reclamante y que ésta no responde a las partidas correspondientes a costas, intereses y honorarios de abogado impuestas a la aseguradora insolvente.

Determinó dicho tribunal que, existiendo en este caso dos reclamantes, la obligación de la Asociación, de probarse los daños alegados, era la de satisfacer una suma no mayor de ciento cincuenta mil (150,000) dólares a cada uno de ellos. Además, ordenó a la parte demandada someter copia de la póliza de seguros otorgada por la Corporación Insular de Seguros a favor de la Universidad.

El 1 de mayo de 1997, la Asociación presentó una moción en la cual solicitó la desestimación del pleito o que se dictara sentencia sumaria a su favor. Además alegó, por primera vez, que la Ley 98, supra, había limitado la responsabilidad de la Universidad a ciento cincuenta mil (150,000) dólares en reclamaciones múltiples, que dicha ley era retroactiva y por lo tanto había quedado liberada de toda responsabilidad cuando satisfizo la cantidad de ciento cincuenta mil (150,000) dólares previamente consignada. Al oponerse a la mencionada moción de sentencia sumaria, los apelantes declararon y alegaron que, ante la evasión de la Asociación de producir el documento de seguro completo[1], habían hecho unas gestiones particulares mediante las cuales habían descubierto que la póliza en cuestión era una combinada en la que participaban otras aseguradoras. Por lo que, aún en caso de que la responsabilidad de la Asociación fuese hasta el máximo de ciento cincuenta mil (150,000) dólares, las otras aseguradoras debían responder de los porcentajes a los que se obligaron hasta el límite de la póliza, volviendo a reiterarse en la aplicación prospectiva de la Ley 98.

---

[1] Surge de los autos que el 2 de junio de 1997, la representación legal de l Asociación de Garantía de Seguros Misceláneos presentó ante el Tribunal una moció donde alegaban, en respuesta a las solicitudes formales de la parte demandant de copia certificada de la póliza en cuestión, que la copia de la póliza qu entregaron a los demandantes el 8 de octubre de 1996, era todo lo que tenían e su expediente. Aducían, no obstante, no poder certificar que era la totalida de la póliza por no ser ellos los custodios de los récords de la Corporación Insula de Seguros, sino el Comisionado de Seguros. La póliza fue entregada por e Secretario de Hacienda, Área de Seguros Públicos, el 25 de junio. El hecho d que la póliza es una sindicalizada surge en la primera y en la penúltima págin del documento de 92 páginas.

No obstante, el 21 de abril de 1998, el Tribunal de Primera Instancia (Hon. Felícita Pérez Rivera) dictó sentencia sumaria en la que determinó que la Ley Núm. 98, supra, era de aplicación retroactiva y declaró que la suma de ciento cincuenta mil (150,000) dólares consignada constituía la cantidad total que la Asociación venía obligada a pagar, como sucesora en interés de la Corporación Insular de Seguros.

Inconformes con esta determinación, los demandantes acudieron en apelación ante el Tribunal de Circuito de Apelaciones, el cual confirmó la sentencia apelada.

Oportunamente acudieron en apelación ante nos, por existir conflictos de sentencias de varios paneles del Tribunal de Circuito de Apelaciones, e imputan que incidió dicho foro intermedio al confirmar la aplicación retroactiva de la Ley Número 98 de 4 de agosto de 1994, supra, a los hechos del presente caso.

Además, plantean los demandantes que incidieron el Tribunal de Circuito de Apelaciones y el Tribunal de Primera Instancia al determinar que las otras compañías de seguros que conjuntamente con la Corporación Insular de Seguros expidieron la póliza en este caso no responden mancomunadamente de la sentencia que por los daños sufridos por los demandantes habrá de recaer en su día.

Los apelantes también nos exhortan a determinar que el límite máximo por el cual viene obligada a responder la Asociación de Garantías de Seguros Misceláneos, cuando sustituye a una compañía aseguradora que ha advenido a ser insolvente, se refiere a cada reclamación y no a cada suceso u ocurrencia. Insisten, además en que la Asociación también responde por los intereses legales y por las costas y honorarios de abogado que genere el pleito.

## II

Hace poco tiempo tuvimos la oportunidad de pronunciarnos sobre la aplicación prospectiva de la Ley Número 98 de 4 de agosto de 1994, supra. Véase, Nieves Cruz v. Universidad, res. el 31 de mayo de 2000, 2000 TSPR 78.

La Ley Núm. 98, supra, que enmendó el Artículo 41.050 del Código de Seguros con el propósito de incluir a la Universidad de Puerto Rico dentro de los límites de responsabilidad que cobijan al Estado Libre Asociado de Puerto Rico[2] en los casos por actos constitutivos de impericia médica o actos constitutivos de culpa o negligencia de una institución de salud operada por la Universidad, será aplicada sólo prospectivamente a aquellos casos cuyas causas de acción hayan surgido estando vigente dicha ley. **Nieves Cruz v. Universidad**, supra. Véase además, Artículo 3 del Código Civil, 31 L.P.R.A. § 3; **Arce Oliveras v. E.L.A.**, 122 D.P.R. 877, 879 (1988); **Rodríguez Ríos v. E.L.A.**, 116 D.P.R. 102, 104, 106 (1985); **Vélez Reboyrás v. Secretario de Justicia**, 115 D.P.R. 533 (1984); **Vázquez v. Morales**, 114 D.P.R. 822 (1983); **Aguilar v. Vázquez**, 6 D.P.R. 1, 9 (1904). No estamos frente a ninguna de las excepcionales circunstancias que ameritan apartarse de dicha norma. **Vélez Reboyrás v. Secretario de Justicia**, supra; **Vázquez v. Morales**, supra.

Los hechos que dieron lugar a la demanda ocurrieron entre el 30 de junio de 1984 y 17 de agosto de 1984, cuando el paciente fue dado de alta del hospital. En ese momento surgió la causa de acción. La demanda fue presentada el 20 de enero de 1989 y el 1 de octubre de 1992 se emitió una "sentencia parcial"[3] en la cual se declaraba responsables a los demandados. La ley Núm. 98 fue aprobada el 4 de agosto de 1994. El Tribunal de Circuito de Apelaciones determinó que la Ley Núm. 98 era de aplicación a este caso porque la sentencia que adjudicó y dispuso de la totalidad de la controversia entre las partes se dictó el 21 de abril de 1998, luego de aprobada la ley, a pesar de que la causa de acción y la presentación de la demanda ocurrieron con anterioridad a la aprobación de ésta. Al así resolver, incurrió en el error señalado.

III

---

[2] 32 L.P.R.A. sec. 3075 *et seq.*, véase art. 2

[3] La cual no posee los requisitos para que pueda ser considerada como tal. Vé 32 L.P.R.A Ap.III R. 43.1.

Por otro lado, la Asociación de Garantía de Seguros Misceláneos de Puerto Rico fue creada por la Ley Núm. 72 de 17 de agosto de 1991[4], 26 L.P.R.A. § 3801 *et seq.*, y es sucesora de la derogada Asociación de Garantías de Seguros de todas clases excepto Vida, Incapacidad y Salud de Puerto Rico. El propósito de su creación fue establecer un mecanismo para el pago de reclamaciones cubiertas bajo determinadas pólizas de seguro, con el fin de evitar excesivas dilaciones en el pago y evitar pérdidas financieras a los reclamantes o tenedores de pólizas como resultado de la insolvencia de un asegurador. 26 L.P.R.A. § 3802.[5] El estatuto obliga a interpretar liberalmente sus disposiciones para lograr el propósito que persigue. 26 L.P.R.A. § 3804[6]. Véase además, <u>A.A.A. v. Librotex, Inc.</u>, 141 D.P.R. 375 (1996).

Se plantea que incidieron el Tribunal de Primera Instancia y el Tribunal de Circuito de Apelaciones al determinar que, a pesar de que la póliza que cubre la presente reclamación es una póliza combinada donde

---

[4] La creación de la Asociación de Garantía de Seguros Misceláneos también f posterior a los hechos que propician la causa de acción en el caso de autos. estos efectos nos dice el profesor Couch que:

> [m]ost states have enacted statutes that establish mechanisms for paying claims against insolvent insurers. These mechanisms, commonly in the form of "guaranty associations" or "guaranty funds" assure the protection of the policyholders in the event of the insurers insolvency. Such statutes have been held not to have retroactive application. **Couch On Insurance 3d §6:26, Pág. 6-54, Vol. 1 (1997) (Énfasis suplido)**

[5] 26 L.P.R.A. sec. 3802- Propósito

> El propósito de este Capítulo es crear un mecanismo para el pago de reclamaciones cubiertas bajo determinadas pólizas de seguro con el fin de evitar excesivas dilaciones en el pago, evitar pérdidas financieras a los reclamantes o tenedores de pólizas como resultado de la insolvencia de un asegurador, ayudar a detectar y prevenir la insolvencia de aseguradores y establecer una asociación que distribuya el costo de esta protección entre los aseguradores mediante la imposición de derramas.

[6] 26 L.P.R.A. sec. 3804- Interpretación

> Este capítulo se interpretará liberalmente para lograr el propósito establecido en la sec. 3802 de este título. Dicho propósito servirá de ayuda y guía en la interpretación de este Capítulo.

participaron en distintas proporciones otras compañías de seguros, éstas no responden en adición a la Corporación Insular de Seguros en las proporciones a las que se obligaron, no obstante la situación de insolvencia de la Corporación y de haber sido sustituida ésta por la Asociación de Garantía de Seguros Misceláneos.

Como hemos indicado, mediante la sentencia del 21 de abril de 1998, el tribunal de instancia concluyó que "habiendo la parte demandante retirado la suma de ciento cincuenta mil (150,000) dólares consignada por la Asociación, conforme a las disposiciones de la <u>Ley Núm. 98 del 24 de agosto de 1994</u>, [aparentemente el tribunal de instancia confunde el Artículo 3808 del Código de Seguros con la Ley Núm. 98, confusión que "pasa" al tribunal apelativo] constituyendo ésta, la cantidad mayor que viene obligada a pagar la Asociación, como sucesora en interés de Corporación Insular de Seguros, se da por concluido el trámite procesal que requirió la presente reclamación de epígrafe".

La parte demandante alegó ante el Tribunal de Circuito de Apelaciones que esta determinación tuvo el efecto de liberar a las compañías aseguradoras participantes en el sindicato[7].

Sobre este planteamiento el Tribunal de Apelaciones se limitó a señalar que la parte apelante "no trajo al pleito a otras aseguradoras, además, una vez adjudicada la responsabilidad de la Universidad de Puerto Rico y la cuantía máxima a pagar según dispone la ley, y dado el hecho que la misma fue consignada, se torna académica cualquier otra controversia". La parte peticionaria sostiene, en síntesis, que era innecesario traer a las otras aseguradoras al pleito una vez que fue emplazada la Corporación Insular de Seguros, a tenor con el Artículo 11.220 del Código de Seguros.

El Artículo 11.220, 26 L.P.R.A. § 1122, establece que:

---

[7] Es práctica usual en la industria del seguro que organizaciones de aseguradore o reaseguradores suscriban en conjunto ciertos tipos de pólizas donde comparte primas, gastos y pérdidas en cantidades preacordadas. Holmes´ Appleman o Insurance § 102.6, Vol.14, pág. 65.

**(1)** **Dos o más aseguradores autorizados podrán expedir conjuntamente una póliza de aseguradores que lleve sus nombres, y serán solidariamente responsables de la misma. Un asegurador podrá expedir pólizas a nombre de un departamento de aseguradores y dichas pólizas indicarán claramente el verdadero nombre del asegurador.**

**(2)** <u>Dos o más aseguradores autorizados podrán, con la aprobación del Comisionado, expedir una póliza combinada</u>, **que contendrá disposiciones sustancialmente como sigue:**

**(a) Que los aseguradores que otorgan la póliza serán solidariamente responsables de la cantidad total de cualesquiera daños o perjuicios, de acuerdo con los términos de la póliza**, <u>o de determinados porcentajes o cantidades de los mismos,</u> **montantes a la cantidad total del seguro de acuerdo con la póliza.**

**(b)** <u>Que la notificación de cualquier procedimiento legal, o de cualquier aviso o prueba de pérdidas, requerido por dicha póliza, constituirá emplazamiento de todos dichos aseguradores.</u>

**Esta sección no se aplicará a las obligaciones de cofiadores. (Énfasis suplido)**

En virtud de la letra clara de ese estatuto, basta que se emplace a cualquiera de los aseguradores suscriptores para que los otros aseguradores queden emplazados. Por lo tanto, una vez emplazada la Corporación Insular de Seguros, era innecesario que los demandantes acumularan a cada aseguradora por separado[8]. Erró el Tribunal de Circuito de Apelaciones al decretar que los apelantes debieron traer al pleito a las otras aseguradoras, ya que es el propio estatuto el que dispone que quedarán emplazados todos los aseguradores que expidieron la póliza combinada con el sólo aviso legal a uno de ellos[9].

---

[8] Además, la póliza de referencia, en la primera página, contiene una disposició que reza: "It is understood that the leader company, Corporación Insular d Seguros, will adjust all claims and that the **Insured will negotiate solely wit said leader** for settlement for all first party claims unless said leader shal enter into receivership or enter into any bankruptcy situation". Como vemos, l aseguradora Corporación Insular de Seguros era la aseguradora líder encargada d todos los trámites y la llamada por contrato a negociar con la asegurada Universida de Puerto Rico cualquier reclamación.

[9] Ese lenguaje no es ajeno al Código de Seguros. Véase, a modo de comparación el inciso (2) de la sección 3509, en referencia a los Aseguradores del país de plan de Lloyd, una sociedad de aseguradores individuales no incorporados. Ést dispone que "**<u>[c]ualquier sentencia dictada contra una o más de las parte demandadas</u>**, según se especifica en el inciso (1) en una acción que surja de la transacciones de seguros del asegurador del Lloyd **será igualmente obligatoria par todos y cada uno de los aseguradores o suscriptores individuales, estén o no esté mencionados como partes en la acción.** Cualquiera de los dichos aseguradores

¿Les aplica a las compañías aseguradoras que suscribieron la póliza sindicalizada junto con la Corporación Insular de Seguros el límite de ciento cincuenta mil (150,000) dólares que establece el estatuto para la Asociación de Garantía Misceláneas?  Concluimos en la negativa.

En el caso de autos existía una póliza de seguros vigente[10] desde el 30 de junio de 1983 hasta el 30 de junio de 1986, con una cubierta de hasta quinientos mil (500,000) dólares por ocurrencia y doscientos cincuenta mil (250,000) dólares por reclamación, suscrita por cuatro aseguradoras, a saber:  Corporación Insular de Seguros en un 30% de la obligación; Insurance Company of North America en un 30% de la obligación; Sun Alliance Insurance en un 25% y El Fénix de Puerto Rico Seguros de San Miguel, Inc. en un 15%. Al no aplicarse a la Universidad retroactivamente los límites de responsabilidad del Estado[11], la sección 2004[12] ordena que los

---

suscriptores individuales que tuviere que efectuar un pago por encima de s participación proporcional tendrá pleno derecho de su reembolso por parte de lo otros aseguradores o suscriptores. (Énfasis suplido)

[10] De los alegatos de las partes surge controversia sobre el alcance de la cubiert de la póliza sindicalizada titulada "Seguro Comprensivo de Responsabilida General" (Comprehensive All Risk Policy), en cuanto si la sindicalización cubr todas las secciones de la póliza (I-VII) o está limitada a la Sección I que cubr la propiedad de la Universidad únicamente.  Ese asunto de cubierta no fue plantead ante nosotros ni tenemos los elementos de juicio para dilucidarlo, por lo que habr de ser atendido por el Tribunal de Primera Instancia.

[11] Es menester señalar que según establece el párrafo 2 del Art. 20.040, 26 L.P.R. sec. 2004, las aseguradoras no podrán invocar la inmunidad del Estado.  Véase Pére Soto v. Maryland Casualty Co., 78 D.P.R.  475 (1955).

[12] El Artículo 20.040 del Código de Seguros, 26 L.P.R.A. sec. 2004, establece l siguiente:

(1)  La obtención de un seguro de responsabilidad por el Estado Libr Asociado de Puerto Rico, sus dependencias o entidades, y por lo municipios y otras subdivisiones políticas, no constituirá ni s estimará que constituye una renuncia de inmunidad gubernamental, s la hubiere, en la responsabilidad por actos u omisiones en que hubier mediado culpa o negligencia por agentes y empleados públicos, except hasta el grado de la indemnización cobrable real y efectivament provista por dicho seguro en cuanto a un suceso en particular; si embargo, no se considerará que existe tal renuncia de inmunidad e cuanto a ningún litigio contra tal entidad pública, nombrada como part demandada, a menos que sea así estipulado en el mismo por dicha entidad

(2)  Todas las pólizas de seguro deberán disponer que el asegurador no podr aducir la defensa de inmunidad gubernamental en virtud de ningun acción incoada contra el asegurador con arreglo a dicha póliza o e virtud de la misma.

aseguradores respondan hasta el grado de la indemnización cobrable real y efectivamente provista por dicho seguro, es decir, hasta el límite del seguro. Las aseguradoras se obligaron directamente con el asegurado Universidad de Puerto Rico, a cubrir una porción del riesgo, creando entre ellas una obligación mancomunada. La aseguradora que advino a estado de insolvencia, Corporación Insular de Seguros está representada aquí por la Asociación  y es a quien le aplican los límites de ciento cincuenta mil (150,000) por reclamación que han sido estatuidos en la sección 3808 del Código de seguros, 26 L.P.R.A.

Las obligaciones mancomunadas son aquéllas en las que se produce un concurso de personas o una pluralidad de sujetos en una misma parte, ya sea del lado del deudor o del acreedor. Las obligaciones que tienen la deuda fijada en prorrateo de las partes, es decir, en que cada una de las personas sea deudora o acreedora de una parte proporcional de la prestación, se denominan mancomunadas a prorrata. Ésta es la situación de autos.  Aquéllas en que cada una de las personas pueda reclamar o tenga que satisfacer, íntegramente la prestación, por tratarse de un frente único, **se denominan solidarias.  Véase**, Vázquez Bote, E. Tratado Teórico, Práctico y Crítico de Derecho Privado Puertorriqueño, Derecho de Obligaciones, Equity, (1991) Tomo V, pág. 136.

El concurso de una pluralidad de deudores en una relación obligatoria tiene como característica el que cada deudor lo es de una parte correspondiente del débito total, tal como establece  el Art. 1090.[13]

Por ello nos dice el Prof. Vázquez Bote que "[e]s característica de estas obligaciones el reparto proporcional o prorrateado del débito entre los

---

(3)   [...] (Énfasis suplido)
(4)
[13] 31 L.P.R.A. sec. 3101 (Art. 1090) Concurrencia de dos o más acreedores Obligación solidaria

La concurrencia de dos o más acreedores o dos o más deudores en una sola obligación no implica que cada uno de aquéllos tenga derecho a pedir ni cada uno de éstos deba prestar íntegramente las cosas objeto de la misma.  Sólo habrá lugar a esto cuando la obligación expresamente lo determine, constituyéndose con el carácter de solidaria.

distintos deudores, o de la deuda entre los diversos acreedores... [S]e trata de una relación obligatoria en que, formalmente, se manifiesta una sola relación de débito y garantía, pero que, *realmente* implica una pluralidad de obligaciones, tantas como acreedores o deudores aparezcan relacionados... [E]l crédito o la deuda se presumirán divididos en tantas partes como acreedores y deudores haya, reputándose créditos o deudas distintos unos de otros'." *OP. Cit.* pág. 137

Por ello cada deudor sólo está obligado a satisfacer su parte correspondiente del débito y si estuviésemos ante un caso en que la prestación fuese indivisible y uno de los deudores resultara insolvente, "no estarán los demás obligados a suplir su falta." § 3103[14]

En el caso de autos, la insolvencia de la aseguradora no afecta las obligaciones de las otras aseguradoras, dado el caso que su responsabilidad es de porcentajes fijos[15], previamente establecidos, de una cantidad previamente determinada. Todos los aseguradores son responsables en el descargo de la obligación que contrajeron directamente con la asegurada de distribuir un riesgo entre ellos, cada cual compartiendo una porción del riesgo.

Subsiste por ello la obligación del reparto prorrateado o proporcional del débito en la parte correspondiente a la que se obligaron, considerando a la Asociación de Garantía de Seguros Misceláneos como el asegurador insolvente Corporación Insular de Seguros, hasta el límite de su obligación, y teniendo todos sus derechos, poderes y obligaciones como si no estuviese insolvente hasta tal límite, tal cual ordena el claro

---

[14] § 3103 – Efectos de la Indivisibilidad

> Si la división fuere imposible, sólo perjudicarán al derecho de los acreedores los actos colectivos de éstos, y sólo podrá hacerse efectiva la deuda procediendo contra todos los deudores. Si alguno de éstos resultare insolvente, no estarán los demás obligados a suplir su falta.

[15] Aun en el caso de que la obligación entre las aseguradoras fuera solidaria una de ellas la satisficiera, surgiría a su haber un crédito y el derecho a reclama nivelación o contribución, esto es, la cuantía satisfecha en exceso de s responsabilidad objetiva. Ramos v. Caparra Dairy, Inc. 116 D.P.R. 60 (1985).

lenguaje del Legislador en la sec. 3808 del Código de Seguros, supra. El pago efectuado por la Asociación no tiene el efecto de reducir la responsabilidad de las otras aseguradoras.

La situación que nos ocupa no está expresamente dispuesta en el Código de Seguros, por cuanto en esta ocasión se trata de una sola póliza de seguros primaria que suscribieran varias aseguradoras, donde la aseguradora líder y encargada es la que ha advenido a la insolvencia. Pero no hay duda de que, por analogía, las disposiciones del Código de Seguros que estatuyen un orden de prelación cuando varias pólizas primarias concurren con un asegurador insolvente que es sustituido por una asociación de garantía, nos pueden servir de guía sobre la intención legislativa de que se recobre, inclusive primero, de las otras pólizas (o aseguradores) antes de recurrir a las asociaciones de garantía[16]. Por ello establece la sección 3812 que:

> [c]ualquier persona que tenga una reclamación contra un asegurador bajo cualquier disposición de una póliza que no sea una póliza de un asegurador insolvente, que sea también una reclamación cubierta, se le requerirá que agote primero sus derechos bajo tal póliza. Cualquier cantidad pagadera en una reclamación cubierta bajo este Capítulo se reducirá en la cantidad de cualquier recobro bajo tal póliza de seguro.
>
> Cualquier persona que tenga una reclamación que puede ser recobrada de más de una asociación de garantías de seguros o su equivalente, gestionará primero de la asociación del lugar de residencia del asegurado, excepto que si fuere una reclamación de un asegurado por daños a la propiedad localizada permanentemente, gestionará primero el recobro de la Asociación en que esté ubicada la propiedad. Cualquier recobro bajo este Capítulo se reducirá en la suma del recobro obtenido de cualquier otra asociación de garantía de seguros o su equivalente.
>
> [...] 26 L.P.R.A. § 3812- [Duplicación] de recobros (**Énfasis suplido**)

Por ello no nos queda duda de que, en casos como el de autos, en los cuales comparece la Asociación de Garantía de Seguros Misceláneos con otras aseguradoras suscribiendo una sola póliza combinada, éstas también vienen obligadas a responder.

---

[16] Igual tratamiento se le ha dado en las jurisdicciones estatales, cuand comparecen asociaciones de garantía con aseguradores solventes:

> Before a claimant will be allowed recovery from a guaranty fund he must exhaust his recovery from all other sources. Thus, when a secondary insurer is available, the secondary insurer should be responsible in the absence of specific language to the contrary. Couch on Insurance 3d, §6:29, Pág.6-61, Vol. 1.

Es preciso determinar si la suma máxima de ciento cincuenta mil (150,000) dólares por la que responde legalmente la Asociación de Garantía de Seguros Misceláneos cuando sustituye a una compañía aseguradora que ha advenido a la insolvencia, se trata de una "por reclamación" o ya bien, por "accidente u ocurrencia".

Surge de los autos que tanto el entonces menor Eddie Montañez López como su señora madre Ana López Prieto son demandantes en este caso con reclamaciones separadas e independientes dentro de la misma acción y que ambos sufrieron daños a causa de los eventos que, según adjudicó el tribunal de instancia en su "sentencia parcial" de 1 de octubre de 1992, se debieron a la negligencia de la demandada Universidad de Puerto Rico. Ambos demandantes ejercen sus causas de acción separadas con sus propios e independientes daños que vienen obligados a probar. Véase, <u>Hernández v. Fournier</u>, 80 D.P.R. 93, 96 (1957); <u>Santini Rivera v. Serv. Air, Inc</u>., 137 D.P.R. 1 (1994). ¿Pero tienen derecho a ser indemnizados por la Asociación de Garantía de Seguros Misceláneos independientemente hasta el límite máximo que protege a la Asociación?

La distinción fundamental entre los conceptos por "accidente u ocurrencia" y "por reclamación", conforme al uso común en la industria del seguro, es que las cláusulas que establecen máximos "por accidente" u "ocurrencia" han de ser interpretadas <u>a base de la causa del accidente y no a base de su efecto</u>. Así pues, cuando una causa próxima, ininterrumpida y continua resulta en daños a más de una persona, hay un solo accidente u ocurrencia dentro del significado de la cláusula "por accidente u ocurrencia", que limita la responsabilidad del asegurador a cierta cantidad por cada evento[17], sin importar el número de reclamaciones

---

[17] Para un análisis más profundo de qué constituye una "ocurrencia o accidente y los problemas que esta distinción ha generado, véase Couch on Insurance 3d §172:12-172:21, Vol. 12; Keeton R., Insurance Law § 5.4(g), West (1988); M Sullivan, Annotation, *What constitutes single accident or occurrence withi liability policy limiting insurer's liability to a specified amount per acciden or occurrence,* 64 A.L.R. 4th. 668.

(causas de acción) independientes que surjan de este accidente u ocurrencia.

No obstante, el término "por reclamación" ("each claim") no se refiere a cada accidente u ocurrencia, sino a cada condena de daños independiente ("each jugdment") por la cual el asegurado resulte responsable como consecuencia de un accidente; es decir cada causa de acción independiente. **Véase** Couch on Insurance 3d, § 172:12, Vol. 12; Annotation, *Liability Insurance: what is "claim" under deductibility-per-claim clause,* 60 A.L.R. 4th. 893.

El Código de Seguros establece que, como parte de los deberes de la Asociación, ésta vendrá obligada a pagar reclamaciones cubiertas existentes antes de la determinación de la insolvencia **y tal obligación se satisfará** pagando al reclamante **una cantidad que no excederá de ciento cincuenta mil (150,000) dólares** por reclamación. **26 L.P.R.A. § 3808.**

Conforme la definición que establece el estatuto (26 L.P.R.A. § 3805, **Definiciones**) "reclamante" **significa** todo asegurado que presente una reclamación como asegurado o toda persona que radique una reclamación por responsabilidad civil. **Ninguna persona que sea un afiliado del asegurador insolvente podrá ser un reclamante.**

Por otro lado:

"Reclamación cubierta"– significa una reclamación no pagada, **incluyendo una de primas no devengadas que surja de,** y esté dentro de la cubierta y esté sujeta a los límites aplicables de una póliza de seguro a la cual aplique este Capítulo que haya sido emitida por un asegurador conforme a lo dispuesto en este título si tal asegurador se convierte en asegurador insolvente **luego de la fecha de vigencia de este Capítulo y donde:**

**(a) El reclamante o el asegurado sea un residente de Puerto Rico al momento en que ocurra el suceso contra el cual se asegura. Para entidades que no sean un individuo, la residencia de un reclamante o de un asegurado es el estado donde radica su sitio principal de negocio al momento de ocurrir el evento asegurado, o**

**(b) La propiedad de la cual surge la reclamación está permanentemente localizada en Puerto Rico.**

*Reclamación cubierta–* no incluirá cantidad alguna adjudicada como daños punitivos o ejemplares; **ni procurados como devolución de primas bajo un plan de tarifaje retrospectivo; ni que se deba a un reasegurador, asegurador, asociación de suscripción conjunta o asociación suscriptora por concepto de recobros por subrogación o de otro modo.** *Id.* **(Énfasis suplido)**

**Es notable que del lenguaje del estatuto no se evidencia la intención[18] específica de limitar las reclamaciones a aquéllas por accidente u ocurrencia,[19] ni el número de reclamaciones que puedan configurarse de un accidente en particular. Se define una reclamación cubierta como:** "una reclamación no pagada... y [que] esté dentro de la cubierta y esté sujeta a los límites aplicables de una póliza de seguro... que haya sido emitida por un asegurador..." **Por lo que la Asociación nunca vendrá obligada a pagar a un reclamante una suma en exceso de la obligación del asegurador insolvente bajo la póliza emitida, suma que deberá ser mayor de cien (100) dólares pero no podrá exceder de ciento cincuenta mil (150,000) dólares** por reclamación. **(26 L.P.R.A. § 3808). Cualquier restricción adicional deberá surgir de la póliza que suscribieran el asegurador y el asegurado[20].**

Corresponde a los tribunales interpretar liberalmente el sentido y signific[a] de las palabras y cláusulas contenidas en el estatuto de manera que se logre [el] objetivo y propósito de proveer protección al asegurado, de pagar las reclamacio[nes] cubiertas y de evitar excesivas dilaciones en el pago y pérdidas financieras a [los] reclamantes o tenedores de pólizas como resultado de la insolvencia de un asegurad[or.] 26 L.P.R.A. § 3804.

Con ese mandato en perspectiva, no tenemos base para sustituir la palabra ["]reclamación" por la de "accidente u ocurrencia", sustrayéndole su común y ordinaria acepción para imprimirle otro significado. El estatuto no utiliza las palabras accidente ni ocurrencia. Expresamente aplica el recobro de ciento

---

[18] **De un examen exhaustivo del historial legislativo de la Ley Núm. 72 de 12 d[e] agosto de 1991, que crea la Asociación de Garantía de Seguros Misceláneos, tampoc[o] se desprende dicha intención.**

[19] **A modo de comparación véase la Ley de Seguro Obligatorio para Vehículos de Moto[r] (26 L.P.R.A. §8052(j), en la que el estatuto específicamente limita la cubiert[a] a tres mil (3,000.00) dólares** por accidente.

[20] Aparentemente, según surge de la póliza presentada en evidencia, el máxim[o] agregado de cubierta bajo la póliza es de quinientos mil (500,000) dólares. E[n] otras palabras, la sentencia que se dicte en este caso no podrá obligar a la[s] aseguradoras al pago combinado de una cantidad mayor de $500,000.00 pactada baj[o] la póliza ni de $250,000.00 por cada una de las reclamaciones. Esto es, la sum[a] total de las partidas relativas a cada uno de los reclamantes, por tanto, no podr[á] exceder de $500,000.00.

cincuenta mil (150,000) dólares a cada **reclamación**[21]. Resolver lo contrario significaría enmendar jurisprudencialmente el estatuto.

No podemos concluir que la intención del Legislador fue la de limitar la responsabilidad de la Asociación a la cantidad de ciento cincuenta mil (150,000) dólares, independientemente del número de reclamantes, perjudicados, causas de acción o reclamaciones que pudiesen presentarse motivadas por un accidente u ocurrencia. Si hay alguna limitación por accidente u ocurrencia deberá surgir de la póliza suscrita entre las partes.

VI

**Además debemos determinar si responde esta Asociación por los intereses legales, las costas y honorarios de abogado que genere el pleito, aun cuando otorgarlos sobrepase la cantidad límite por reclamación que la Asociación está obligada a pagar.**

**El Tribunal de Primera Instancia, analizando cierta jurisprudencia de los tribunales estatales[22], decidió que la Asociación de Garantía de**

---

[21] **En las jurisdicciones estatales la opinión sobre esta controversia est dividida. A pesar de que en algunas jurisdicciones se ha considerado que l cantidad máxima a ser recobrada de una asociación de garantía es del límite impuest no importa cuántas causas de acción resulten, en otras se ha considerado que dicha reclamaciones han de ser consideradas como múltiples para los fines del estatuto Couch on Insurance 3d § 6:33, pág. 6-71, Vol.1;** *Véase además* Ramage v. Alabama Ins Guar. Ass'n, 75 F.3d 137 (3rd Cir. 1996); Ramage v. Alabama Ins Guar. Ass'n, 919 F. 2d 1010 (5th. Cir. 1990); Oglesby v. Liberty Mut. Ins. Co 832 P. 2d 834 (1992), **nota 11.**

[22] **Hemos encontrado opiniones de otras jurisdicciones más convincentes, por se sus estatutos más afines a los nuestros y a nuestros propósitos. Véase** Sifers v General Marine Catering Co. **892 F.2d 386 (5th Cir. 1990;** Ramage v. Alabama In Guar Ass'n, **919 F. 2d 1010 (5th. Cir. 1990);** F.I.G.A. v. R.V.M.P. Corp., **874 F.2 1528 (11th. Cir. 1989);** Stone v. Kentucky Ins. Guar. Ass´n, **908 S.W. 2d 675. Sobr este tema nos comenta el profesor Couch que:**

> **The issues of whether costs, attorneys' fees, penalties and interest are recoverable from a state insurance guaranty fund may depend upon statutory language specific to these items. Under some statutes, the guaranty fund is liable for contractual, but not statutory obligations. Under such statutes, attorney' fees and penalties are not recoverable from the fund. An exception to this rule arises when the insolvent insurer's policy covered such fees. Other jurisdictions place the guaranty fund in the shoes of the insolvent insurer and allow recovery against the fund for any elements of damages that would have been recoverable from the insurer had it been solvent, including attorney's fees, and statutory penalties. Couch on Insurance 3d., §6:61, pág. 6-64, Vol. I.**

Seguros Misceláneos es responsable solamente por las "reclamaciones cubiertas" para los fines de la ley habilitadora, por lo que no responde por las costas, honorarios de abogado e intereses legales que genere el pleito. No coincidimos con tal determinación.

El claro mandato en el lenguaje del inciso (2) de la sección 3808 a los efectos de que la Asociación "[s]e considerará como el asegurador hasta el límite de su obligación en las reclamaciones cubiertas y hasta tal límite tendrá todos los derechos, poderes y obligaciones del asegurador insolvente como si este no estuviera insolvente", extiende las obligaciones del asegurador insolvente a la Asociación hasta el límite de su responsabilidad. Las obligaciones del asegurador insolvente son coextensivas a la Asociación hasta tal límite. Por lo que sin duda responde la Asociación por todo lo que respondería un litigante común dentro del límite estatuido. ¿Pero cuál es la situación cuando, como en autos, las mencionadas partidas sobrepasan dicho límite?

La Asociación es una entidad compulsoria compuesta por todos los aseguradores autorizados a tramitar toda clase de seguros en Puerto Rico, excepto aquellos expresamente excluidos por la Ley. 27 L.P.R.A. § 3803. Pertenecer a la Asociación es una condición que la ley le impone a todos los aseguradores concernidos, que pretendan contratar seguros en Puerto Rico. 26 L.P.R.A. § 3806. Se crea con el propósito principal de satisfacer reclamaciones exigibles bajo pólizas de seguro contra aseguradores miembros, declarados insolventes por un tribunal de jurisdicción competente, para evitar pérdidas y dilaciones excesivas a los reclamantes. 26 L.P.R.A. § 3802.

Los dineros para el pago de dichas reclamaciones provienen de un fondo cre[a] mediante derramas que se imponen a los aseguradores miembros, en proporción de ha[sta] un máximo de dos por ciento (2%) de las primas anuales que cada uno haya suscr[ito] en Puerto Rico. 26 L.P.R.A, § 3808(3). Los aseguradores miembros pueden recob[rar] hasta **el cien por ciento (100%)** de dichas derramas, mediante aumentos en las pri[mas] de seguros. Ello queda evidenciado en el estatuto, que establece:

26 L.P.R.A. § 3816 **Derramas en las tarifas**

Las tarifas y primas cargadas sobre las pólizas de seguro a las cuales aplica este Capítulo **incluirán aquella porción que sea suficiente para recobrar una suma igual a las sumas que el asegurador miembro pague a la Asociación,** menos cualesquiera sumas que la Asociación devuelva a la Asegurador miembro y **en tales tarifas no se considerarán excesivas porque contengan una cantidad razonablemente calculada para recobrar las derramas que pague el asegurador miembro.**

Es decir, las reclamaciones contra un asegurador insolvente se absorben, primera intención, por la industria de seguros, mediante el mecanismo de l derramas y por los compradores de seguros en última instancia. Cfr. Com. de Segur v. Builders Ins. Co., 108 D.P.R. 625 (1979). Además, la Asociación podrá reembols a los aseguradores miembros cualquier excedente, en proporción a su aportación al final de cualquier año calendario los activos exceden las obligaciones. L.P.R.A. § 3808 (b)(6).

La Asamblea Legislativa fue minuciosa al disponer sobre los detall relacionados con la intervención de la Asociación en estos procesos especiale sin embargo, no consignó específicamente en la ley si los intereses, las cost y honorarios de abogado son o no son pagaderos por la Asociación. No los inclu en el estatuto como tampoco los excluyó. La razón es clara. En estric hermenéutica, sabemos que lo que no se regula por la ley especial, está suje a las disposiciones generales aplicables del derecho civil que versan sobre materia. Art. 12 del Código Civil, 31 L.P.R.A. § 12; véase además, Rosa Res v. Rodríguez Solís, 111 D.P.R. 89 (1981). Cuando no existen excepciones a l términos positivos de un estatuto, se presume que la intención de la Legislatu fue que no los hubiese. La Asamblea Legislativa, cuando ha querido excluir de l costas, los intereses por temeridad y los honorarios de abogado a algún tipo litigante, expresamente lo ha consignado[23]. Fue la intención legislativa que to controversia que involucrase a la Asociación con el pago de costas, interes legales y honorarios de abogado, dependiese de los estatutos procesales que regul la materia[24].

VII

---

[23] Véase 32 L.P.R.A. § 3083.

[24] Couch on Insurance 3d., § 6:61, *Id*.

La Regla 44 de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 44, rige controversia ante nos, así como la jurisprudencia aplicable.

Examinemos la Regla 44.1[25] que estatuye y dispone sobre las costas honorarios de abogados. En materia de costas lo que regulamos es el reembol a la parte que resulte victoriosa, de los gastos necesarios y razonables q satisfizo durante el transcurso del proceso. Se imponen las costas porque entiende que esta forma de tributar a los ciudadanos obliga a aquellos que utiliz los servicios judiciales a llevar una carga mayor que los contribuyentes en gener y son además un factor que detiene la litigiosidad, ya que una justicia totalmen gratuita traería toda clase de litigios a los tribunales. Hernández Colón, Rafae Derecho Procesal Civil, Michie, San Juan, P.R., 1997, Cap. 42, pág. 284-288. Estado, como cualquier ciudadano particular, puede ser condenado a pagar costas[26]

Para efectos de esta controversia, la regla es clara: "[l]as costas le ser concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia apelación, **excepto en aquellos casos que se dispusiera lo contrario por ley o p estas reglas**". Nada disponen las reglas ni la ley especial que creara la Asociaci de Garantía de Seguros Misceláneos sobre las costas por lo que debemos presum

---

[25] **Regla 44.1  Las costas y honorarios de abogado**

      (a) Su *concesión.* – Las costas costas le serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación, excepto en aquellos casos que se dispusiera lo contrario por ley o por estas reglas. Las costas que podrá conceder el tribunal son los gastos incurridos necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, a su discreción, estima que un litigante debe reembolsar a otro.

      (b) *Cómo se concederán.*-...

      ( c ) *En apelación.*-...

      *(d) Honorarios de abogado.*- En caso de cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. (Énfasis suplido).

[26] 32 L.P.R.A. §3083 (Ley de Pleitos contra el Estado)

    Regirán para las acciones aquí autorizadas los términos prescriptivos fijados en las leyes aplicables. **La sentencia contra el Estado no incluirá** en ningún caso el pago de intereses por periodo alguno **anterior** a la sentencia ni concederá daños punitivos. **La imposición de costas se regirá por el procedimiento ordinario.[**...**]** (Énfasis suplido)

que la intención del legislador fue concederlas.  Ausente una expresión legislati

sobre este particular, no podemos enunciar razón alguna para exceptuar a

Asociación a lo que ni siquiera el Estado está exceptuado.

Conforme a la norma de hermenéutica, a los efectos de que "se entiende permiti

lo que no está prohibido" [27] *o qui non improbat, aprobat*, hemos de llegar a la mis

conclusión en cuanto a los honorarios de abogado.  Éstos son una condena especi

que se impone al litigante que ha acudido a los tribunales en manifiesta temerid

o frivolidad, por haber ocupado innecesariamente el tiempo de la administraci

de la justicia.  El propósito es desalentar esa práctica y resarcir a la vícti

del litigio temerario de parte de los gastos en que incurrió.  Hernández Coló

R., *op. cit.,* Cap. 44, pág. 291-292.  El Estado no es responsable por los honorari

por temeridad[28].

La determinación de temeridad es una de carácter individual.  El tribunal

de apreciar la existencia de temeridad en la actuación de la parte litigante.  P

ello, los honorarios no son automáticos ni parte de la sentencia condenatoria.

obligación de satisfacer una condena por temeridad surge como resultado de

conducta de la parte que se arriesga a litigar un caso y debe asumir

responsabilidad por sus actos. Torres Ortiz v. E.L.A., 136 D.P.R. 556 (1994

Aunque es discrecional del juzgador determinar si ha habido o no temeridad y

fijación de la cuantía, una vez determinada la temeridad, su imposición

mandatoria.  Cuevas Segarra, Tratado de Derecho Procesal Civil, San Juan, J.T.S

2000, Tomo II, pág. 727.

El Legislador, para evitar el fracaso de los propósitos de la ley y reconocien

la particular composición de la Asociación y de su posibilidad de ejecutar c

temeridad, no la investió estatutariamente del privilegio estatal de exceptuar

del pago de honorarios de abogado.

---

[27]  Pueblo v. Valdés Sánchez, 140 D.P.R. 490 (1966); Campos del Toro v. Ame. Transi Corp., 113 D.P.R. 337 (1982).

[28]  Véase Sucn. Arroyo v. Municipio, 81 D.P.R. 434 (1959) y su progenie.  De Leó v. Sria. de Instrucción, 116 D.P.R. 687 (1985); Colondres Vélez v. Bayron Vélez 114 D.P.R. 833 (1983).

Por su parte, la Regla 44.3[29] establece dos tipos de intereses legales: el interés post sentencia, al que tiene derecho <u>toda parte</u> que obtenga a su favor una sentencia y que ha de computarse sobre la cuantía de la sentencia desde el momento en que ésta se dicte hasta que sea satisfecha, con el objetivo de evitar "la posposición irrazonable en el cumplimiento de las obligaciones existentes y estimular el pago en el menor tiempo posible". Además la regla establece el interés presentencia que habrá de imponerse sobre la cuantía de la sentencia a la parte que haya procedido con temeridad. En casos de cobro de dinero se computará desde que haya surgido la causa de acción hasta la fecha en que se dicte sentencia y en casos de daños y perjuicios, desde la radicación de la demanda hasta la fecha en que se dicte sentencia, salvo aquellas excepciones que la misma regla dispone.

En <u>Insurance Co. of P.R. v. Tribunal Superior</u>, 100 D.P.R. 405 (1972) analizando la antigua regla 44.4, en lo sustancial igual a la actual 44.3, reiteramos que "[l]a imposición de intereses [por temeridad] es de

---

[29] Regla 44.3; Interés legal

(a) Se incluirán intereses al tipo que fije por reglamento la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras y que está en vigor al momento de dictarse la sentencia, en toda sentencia que ordena el pago de dinero, a computarse sobre la cuantía de la sentencia desde la fecha en que se dictó la sentencia y hasta que ésta sea satisfecha, incluyendo costas y honorarios de abogado. El tipo de interés se hará constar en la sentencia.

La Junta fijará y revisará periódicamente la tasa de interés por sentencia tomando en consideración el movimiento en el mercado y con el objetivo de desalentar la radicación de demandas frívolas, evitar la posposición irrazonable en el cumplimiento de las obligaciones existentes y estimular el pago de las sentencias en el menor tiempo posible.

(b) El tribunal también impondrá a la parte que haya procedido con temeridad el pago de interés al tipo que haya fijado la Junta en virtud del inciso (a) de esta regla y que esté en vigor al momento de dictarse la sentencia desde que haya surgido la causa de acción en todo caso de cobro de dinero y desde la radicación de la demanda, en casos de daños y perjuicios, y hasta la fecha en que se dicte sentencia a computarse sobre la cuantía de la **sentencia,** excepto cuando la parte demandada sea el Estado Libre Asociado de Puerto Rico, sus municipios, agencias, instrumentalidades o funcionarios en su carácter oficial. **El tipo de interés se hará constar en la sentencia.**

naturaleza idéntica a la imposición de honorarios de abogado. Ambos proceden cuando la parte perdidosa ha sido temeraria y ambos persiguen idénticos propósitos: disuadir la litigación y alentar las transacciones, mediante sanciones a la parte temeraria que compensen los perjuicios económicos y las molestias producto de su temeridad sufridas por la otra parte".

No obstante, los intereses que han de acumularse desde el momento en que finalmente se dicte sentencia, proceden como cuestión de ley y no son contrarios a las leyes de inmunidad gubernamental, por lo que son exigibles incluso contra el Estado. Este responde como cualquier litigante común, de las costas y los intereses post sentencia aun cuando la concesión de estas partidas tenga el efecto de que la totalidad de la sentencia sobrepase la cantidad límite que establece la Ley de Pleitos contra el Estado, supra.

El derecho de un litigante victorioso a recobrar esos intereses post sentencia es estatutario. Véase 32 L.P.R.A. Ap. III, R. 44.3; 32 L.P.R.A § 3083; Insurance Co. of P.R. v. Tribunal Superior, supra; véase además, Municipio de Mayagüez v. Rivera, 113 D.P.R. 467 (1982). Estos intereses forman parte de la sentencia dictada y pueden ser recobrados aún cuando no se mencionen en la misma. P.R. Ame. Ins. Co. v. Tribunal Superior, 82 D.P.R. 621, 622-623 (1962). El propósito de esta regla es promover que el deudor de una sentencia se ajuste con prontitud a los términos de ésta y compense expeditamente al acreedor de la misma.

El Art. 14 de nuestro Código Civil, 31 L.P.R.A. § 14, dispone que cuando la ley es clara y libre de toda ambigüedad, su letra no debe ser menospreciada bajo el pretexto de cumplir su espíritu. La letra del inciso *a* de la citada regla no puede ser más clara: bajo sus disposiciones es mandatorio el que un tribunal, al dictar una sentencia en que ordene el pago de dinero, imponga el pago de interés al tipo legal sobre la cuantía de la sentencia sin excepción de clase alguna. Municipio de Mayagüez v. Rivera, supra, pág. 469-470.

**Cuando se creó la Ley que originó la Asociación, la Legislatura estaba conciente de la existencia de nuestras Reglas de Procedimiento Civil. No debemos desautorizar su uso so pretexto de cumplir con el espíritu de la Ley. Con su inclusión quedan bien servidos tanto la política pública que está detrás de nuestras Reglas de Procedimiento Civil, como la letra y el espíritu de la ley especial, de proveer un mecanismo expedito para el pago y asimismo el mandato de interpretación liberal para la consecución de dichos propósitos. 26 L.P.R.A., § 3802, 3804.**

**Evidentemente la Asamblea Legislativa quiso tratar a la Asociación como a un litigante común y de ninguna forma pretendió equipararla al Estado en sus inmunidades. No quiso proveerle a ésta** "una patente de corso para el litigio", **que tuviera la consecuencia de derrotar la política pública y los propósitos que originaron la ley[30]. Más aún, una interpretación contraria tendría el efecto indeseable de que un asegurado, uno de los sujetos que intenta proteger esta ley, sea el que, a la larga, tenga que pagar por la temeridad en que incurrió** la propia Asociación. **En este caso el asegurado es la Universidad de Puerto Rico, por lo que las partidas serían pagadas con fondos públicos.**

**No hay indicación alguna en la ley especial que comentamos que conduzca a pensar que el legislador intentara una aplicación diferente de estas reglas a la Asociación, aun cuando ello ocasione que la cuantía finalmente adjudicada sobrepase el límite de $150,000.00.**

Pero es claro que, en equidad, no le podemos adjudicar la temeridad de la aseguradora insolvente a la Asociación. Ella sólo puede ser responsable por su propia temeridad, en aquellos casos en que lo sea, aspecto

---

[30] Adelantamos, por medio de este pronunciamiento, el propósito de alentar la transacciones y prevenir los pleitos frívolos y evitamos promover el que l Asociación pudiera incurrir en tácticas dilatorias, tanto durante el litigio com en el pago de las sentencias, ya que podría invertir todos los conceptos de costas honorarios de abogado e intereses y la sentencia en su totalidad a un interés mayo y en el neto no tendría que pagar suma alguna por éstos conceptos. Se verí "recompensada" por excesivas dilaciones en el pago de las sentencias y provocarí que los demandantes victoriosos fuesen objeto de pérdida económica sustancial en contra de la política pública que alimenta la creación de la Asociación. Veás Sifers v. General Marine Catering Co., 892 F.2d 386 (5th Cir. 1990); Ramage v Alabama Guar Ass'n, 919 F 2d 1010 (5th Cir. 1990); Stone v. Kentucky Insuranc Guaranty Ass'n, 908 S.W.2nd 675 (1995).

que de ninguna forma estamos adjudicando en este momento.  Ya hemos dicho que la determinación de temeridad es una individual. Por ello la Asociación no está obligada a pagar honorarios de abogado e intereses por temeridad incurridos previo a la insolvencia de la aseguradora y a su comparecencia en el caso de autos.

Adjudicamos que la Asociación responde de las costas y los intereses legales post sentencia de la que en su día recaiga, aún si sobrepasare el límite de $150,000.00, en una cantidad proporcional a su responsabilidad compartida con las otras aseguradoras y la Universidad de Puerto Rico. También adjudicamos que la Asociación responde por los intereses por temeridad y honorarios de abogado en los casos en que respondería un litigante común.

**Este Tribunal resuelve que erró el Tribunal de Circuito de Apelaciones al confirmar la sentencia sumaria del Tribunal de Primera Instancia.  Por lo tanto dictará sentencia devolviendo el caso al Tribunal de Primera Instancia para que continúen los procedimientos conforme a lo resuelto.**


**JOSE A. ANDREU GARCIA**
**Juez Presidente**

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Eddie Montañés López
Ana López Prieto

    Apelantes

      vs.                      AC-1999-11

Universidad de Puerto Rico
y otros

    Apelados

SENTENCIA

San Juan, Puerto Rico, a 21 de marzo de 2002

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta sentencia revocando la sentencia dictada por el Tribunal de Circuito de Apelaciones. Se devuelve el caso al Tribunal de Primera Instancia, para que continúen los procedimientos conforme a lo aquí resuelto.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. El Juez Asociado señor Corrada del Río está conforme con los Acápites I hasta el V y disiente de los Acápites VI y VII. Los Jueces Asociados señores Hernández Denton y Rivera Pérez no intervinieron.

Carmen E. Cruz Rivera
Secretaria del Tribunal Supremo Interina