Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| CARMEN M. BÁEZ RIVERA, Y LA SUCESIÓN DE NÉSTOR NAZARIO MORENO ET AL.<br><br>APELANTES<br><br>v.<br><br>DR. JOSÉ R. CRUZ CESTERO ET AL.<br><br>APELADOS | KLAN202400794 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm. J DP2013-0471<br><br>Sobre: IMPERICIA MÉDICA y DAÑOS Y PERJUICIOS |

Panel integrado por su presidente, el Juez Bonilla Ortiz, el Juez Pagán Ocasio, y el Juez Marrero Guerrero.

Pagán Ocasio, juez ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 7 de febrero de 2025.

### I.

El 28 de agosto de 2024, la señora Carmen M. Báez Rivera (señora Báez Rivera) y la Sucesión del señor Néstor Nazario Moreno (señor Nazario Moreno) compuesta por esta y sus hijos- la señora Elizama Nazario Pacheco, la señora Tamaris Nazario Pacheco, la señora Caroline Nazario Pacheco, la señora Amy Nazario Pacheco, la señora Sharon Nazario Pacheco y el señor Diego José Nazario Báez- (en conjunto, parte apelante) presentaron un recurso de apelación por el que solicitaron que revoquemos y modifiquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce, (TPI o foro primario) el 17 de julio de 2024, y notificada y archivada en autos el 30 de julio de 2024.[2]

En la misma, el foro primario declaró Ha Lugar la demanda del caso de epígrafe, y, en consecuencia, le impuso al doctor José R.

---

[1] Véase Orden Administrativa OATA-2023-116, emitida el 5 de julio de 2023.
[2] Apéndice del *Escrito de Apelación, Sentencia,* págs. 1-56.

Número Identificador
SEN2025_____

Cruz Cestero (doctor Cruz Cestero o apelado) un 80% de responsabilidad correspondiente a dos partidas; a saber, $80,000.00 como indemnización por los daños sufridos por la señora Báez Rivera y $12,000.00 a favor de los miembros de la Sucesión por los daños sufridos por el señor Nazario Moreno. En otras palabras, condenó al doctor Cruz Cestero a satisfacer la suma global de $92,000.00. El TPI también le impuso al doctor Rafael Vázquez Pelyhe (doctor Vásquez Pelyhe) un 15% de responsabilidad y un 5% de responsabilidad al Hospital San Cristóbal. Estos últimos fueron retirados del pleito de marras mediante una *Sentencia por Desistimiento Parcial* emitida el 10 de diciembre de 2018, y notificada el 12 de diciembre de 2018;[3] y una *Sentencia Parcial* por estipulación emitida el 29 de junio de 2017, y notificada y archivada en autos el 13 de julio de 2017, respectivamente.[4]

El 28 de agosto de 2024, la parte apelante también presentó una *Moción solicitando se acepte apéndice y transcripción de la prueba oral estipulada en cd e informativa.* Por medio de esta, solicitó permiso de este Tribunal para presentar el apéndice del recurso de apelación y la Transcripción de Prueba Oral (TPO) en CD. Además, indicó que no estaría presentando alegato suplementario, pues ya las partes habían estipulado la TPO en el caso con el alfanumérico KLAN202300307.[5]

Luego de ello, emitimos una *Resolución* el 11 de septiembre de 2024 donde ordenamos al doctor Cruz Cestero, al Sindicato de Aseguradores para la Suscripción Conjunta de Seguros de Responsabilidad Médico Hospitalaria (SIMED) y Puerto Rico Medical Insurance Company (PRMDic) (en conjunto, parte apelada) a informar, dentro de cinco (5) días, a partir de la notificación de dicha

---

[3] *Íd., Sentencia por Desistimiento Parcial*, pág. 177-179.
[4] *Íd., Sentencia Parcial*, págs. 178-179.
[5] *Íd., Sentencia*, págs. 57-84.

*Resolución,* si estipulaba la TPO presentada por la parte apelante, y la cual había sido estipulada en el caso con el alfanumérico KLAN202300307.

El 19 de septiembre de 2024, el doctor Cruz Cestero radicó una *Moción en Cumplimiento de Orden* por la que nos informó que la TPO fue estipulada en aquel caso y que, de igual manera, la estipulaba en el caso de marras.

Posteriormente, emitimos una *Resolución* el 25 de septiembre de 2024 mediante la cual le concedimos a la parte apelada hasta el 21 de octubre de 2024 para presentar el alegato en oposición.

Después de concederle una prórroga, la parte apelada presentó un *Alegato en Oposición a Apelación* el 6 de noviembre de 2024.

El 20 de noviembre de 2024, la parte apelante presentó una *Moción solicitando se nos permita presentar réplica a alegato de la parte apelada.*

Por su parte, SIMED, como aseguradora del doctor Cruz Cestero, radicó una *Moción en Oposición a Solicitud de Réplica* el 18 de noviembre de 2024.

Luego de ello, el 25 de noviembre de 2024, emitimos una *Resolución* por la que denegamos la solicitud de la parte apelante para presentar dicha réplica.

Con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso y, en adelante, pormenorizamos los hechos procesales atinentes al recurso de apelación.

**II.**

El caso de marras tiene su génesis el 18 de octubre de 2013 cuando la parte apelante presentó una *Demanda* en concepto de daños y perjuicios por impericia médica en contra del doctor Cruz Cestero, SIMED, PRMDic, el Hospital San Cristóbal, y el doctor

Vázquez Pelyhe.[6] La parte apelante sostuvo que el 14 de noviembre de 2011 el doctor Cruz Cestero le realizó a la señora Báez Rivera un procedimiento quirúrgico llamado bloqueo cervical en el Hospital San Cristóbal de Ponce. Expuso que, como consecuencia de dicho bloqueo, la señora Báez Rivera desarrolló cuadriparesia incluyendo debilidad en el agarre, disfunción aguda intestinal y urinaria manifestada por distensión abdominal, constipación y retención urinaria. Además, alegó que la señora Báez Rivera tuvo que permanecer en su casa por covalencia durante un mes, se quedó sin habla por más de un día, y tuvo que someterse a otros procedimientos quirúrgicos.

También indicó la parte apelante que el doctor Cruz Cestero no le informó a la señora Báez Rivera sobre los riesgos y posibles complicaciones inherentes a dicha intervención, por lo que no medió un consentimiento informado de la señora Báez Rivera. Por otro lado, expuso que el doctor Cruz Cestero transfirió a la señora Báez Rivera al servicio del médico internista, el doctor Vázquez Pelyhe. Planteó la parte apelante que el doctor Vázquez Pelyhe actuó negligentemente al no seguir las recomendaciones del fisiatra, el doctor Gerena, con el propósito de brindarle el tratamiento neurológico adecuado.

Por medio de dicha *Demanda*, la parte apelante solicitó $800,000.00 en concepto de angustias físicas y mentales; $300,000.00 por incapacidad física y mental; aproximadamente $20,000.00 por gastos médicos; y alrededor de $5,000.00 por concepto de daños económicos o pecuniarios a favor de la señora Báez Rivera. Además, solicitó una suma no menor de $300,000.00 por los daños alegadamente sufridos por el señor Nazario Moreno.

---

[6] *Íd.*, *Demanda*, págs. 158-161.

Ulteriormente, SIMED, como aseguradora del doctor Vázquez Pelyhe y el doctor Cruz Cestero, presentó una *Contestación a Demanda* el 27 de diciembre de 2013.[7]

Por su parte, el doctor Cruz Cestero presentó una *Contestación a la Demanda* el 8 de enero de 2014[8] y una *Contestación Enmendada a la Demanda* el 5 de septiembre de 2017.[9]

El 29 de junio de 2017, el TPI emitió una *Sentencia Parcial*, notificada y archivada en autos el 13 de junio de 2017, por la que desestimó el pleito únicamente en cuanto al Quality Health Services of PR h/n/c Hospital San Cristóbal.

Luego de varios trámites procesales, el 10 de diciembre de 2018, el foro primario emitió una *Sentencia por Desistimiento Parcial*, notificada el 12 de diciembre de 2018. Por medio de esta, el TPI dio por desistida la causa de acción presentada en contra del doctor Vázquez Pelyhe y su aseguradora SIMED.

Posteriormente, el foro *a quo* celebró un juicio en su fondo, durante los días 28 y 29 de mayo de 2019; 3, 4 y 5 de junio de 2019; 25 y 26 de noviembre de 2019; 21, 22 y 24 de enero de 2020; y 20 de julio de 2021, y cuyas incidencias quedaron recogidas en la voluminosa TPO. La prueba testifical de la parte apelante consistió de los testimonios de la señora Báez Rivera, el señor Nazario Moreno, la señora Elsa Ivette Báez Rivera, el doctor Boris Rojas Rodríguez (doctor Rojas Rodríguez), quienes testificaron sobre los daños causados a la señora Báez Rivera y el señor Nazario Moreno ante el procedimiento del bloqueo que le realizó el doctor Cruz Cestero a la señora Báez Rivera. También utilizaron los testimonios de los co-demandados; a saber, el doctor Cruz Cestero y el doctor Vázquez Pelyhe, quien aceptó el traslado de la señora Báez Rivera después

---

[7] *Íd.*, *Contestación a Demanda*, págs. 170-174.
[8] *Íd.*, *Contestación a la Demanda*, págs. 162-165.
[9] *Íd.*, *Contestación Enmendada a la Demanda*, págs. 166-169.

del bloqueo y quien, a pesar de diagnosticarle a ella haber sufrido de un derrame cerebral (CVA o *stroke*), no le brindó tratamiento alguno y la dio de alta. Por su parte, la parte apelada ofreció el testimonio del doctor Cruz Cestero y del perito Dr. Renier Méndez De Guzmán.

Luego de culminado el juicio, el TPI emitió una *Sentencia* el 30 de enero de 2023, notificada y archivada en autos el 16 de febrero de 2023 por la que denegó la *Demanda* de epígrafe. [10] Dicho foro determinó que hubo ausencia de prueba pericial objetiva sobre los daños sufridos por la parte apelante y no existió un vínculo con un acto o una omisión imputable por parte del doctor Cruz Cestero. Sostuvo que la actuación del doctor Cruz Cestero no se desvió de la mejor práctica profesional establecida de la medicina, y que la parte apelante no demostró mediante preponderancia de la prueba que dicho médico fue negligente en el tratamiento que le brindó a la señora Báez Rivera. Por último, concluyó el foro primario que creyó que el doctor Cruz Cestero orientó a la señora Báez Rivera sobre el procedimiento que se le iba a realizar y las posibles consecuencias del mismo.

Inconforme con ese dictamen, la parte apelante presentó un recurso de apelación ante este Tribunal y posteriormente, este Panel emitió una *Sentencia* el 31 de agosto de 2023 en el caso con el alfanumérico KLAN202300307.[11] Por medio de nuestra determinación, resolvimos que el doctor Cruz Cestero fue negligente al momento de inyectar medicamentos usados en el bloqueo del cordón espinal de la señora Báez Rivera. También determinamos que el doctor Cruz Cestero se apartó de las normas mínimas de cuidado médico al no obtener el consentimiento de la señora Báez

---

[10] Apéndice del *Escrito de Apelación, Sentencia*, págs. 85-157.
[11] *Íd.*, págs. 57-84.

Rivera y al no orientarla sobre todos los posibles riesgos como consecuencia de la operación incluyendo un daño neurológico.

Insatisfecho, el doctor Cruz Cestero radicó un recurso de *certiorari* ante el Tribunal Supremo el 20 de octubre de 2023.[12] Sin embargo, fue declarado No Ha Lugar mediante una *Resolución* emitida el 1 de diciembre de 2023, y notificada el 5 de diciembre de 2023.[13]

Luego de la continuación de los procedimientos ante el foro primario, se radicó otro recurso ante este mismo panel. El 22 de julio de 2024, emitimos una *Resolución* en el caso bajo el alfanumérico KLCE202400697 por la que desestimamos el recurso de *certiorari* presentado por la parte apelante, luego de tornarse académico. Lo anterior, pues la partida que había solicitado la parte apelante en concepto de costas con intereses ya había sido consignada por el doctor Cruz Cestero en el foro *a quo*.

Devuelto el caso al TPI, el foro primario emitió una *Sentencia* el 17 de julio de 2024, notificada y archivada en autos el 30 de julio de 2024, por la cual emitió 469 determinaciones de hecho. Por medio de este dictamen, dicho foro le adjudicó al doctor Cruz Cestero un 80% de responsabilidad. Le impuso el pago de la cantidad de $80,000.00 en concepto de los daños sufridos por la señora Báez Rivera; y $12,000.00 por los daños sufridos por el esposo de esta, el señor Nazario Moreno. También le adjudicó un 15% de responsabilidad al doctor Vázquez Pelyhe; y un 5% de responsabilidad al Hospital San Cristóbal. Respecto al porcentaje de responsabilidad adjudicado al doctor Cruz Cestero, el foro primario resolvió que:

> Esto apoyado en el hecho adjudicado por el Tribunal de Apelaciones a los fines de que el Dr. Cruz Cestero fue el médico que realizó el procedimiento del bloqueo a la demandante siendo negligente al momento de inyectar los medicamentos usados en el bloqueo en el cordón espinal de

---

[12] Apéndice del *Alegato en Oposición a Apelación, Escrito de Certiorari*, págs. 1-34.
[13] *Íd.*, *Resolución del Tribunal Supremo* en el caso CC-2023-0689, págs. 35-36.

la señora Báez, causándole daños físicos y angustias mentales. Asimismo, el foro apelativo intermedio concluyó que fue demostrado que el Dr. Cruz Cestero no cumplió con las normas mínimas de conocimiento y cuidado médico, tampoco empleó su mejor esfuerzo ni el tratamiento adecuado para atender la condición que desarrolló la paciente, ni procuró un consentimiento informado por parte de la Sra. Báez. Por tanto, concluimos que el Dr. Cruz Cestero tuvo una responsabilidad sustancialmente mayor en el manejo y tratamiento de la de la Sra. Báez.[14]

Insatisfecha con la determinación del TPI, la parte apelante presentó ante nos un *Escrito de Apelación* el 28 de agosto de 2024, y le imputó al foro primario los siguientes señalamientos de error:

PRIMER ERROR: El TPI incurrió en error manifiesto, prejuicio y parcialidad en la apreciación de la prueba de daños. Las determinaciones de hechos en la Sentencia notificada el 31 de julio de 2024, no son un reflejo de toda la prueba de daños desfilada en el juicio. El TPI incidió al obviar la incontrovertida prueba de daños de naturaleza pericial (que incluye una determinación de impedimento permanente) e infravalorar los daños sufridos por los Apelados aun cuando algunos de estos daños surgen de las doce determinaciones de hecho que incluyó el TPI en la sentencia que se apela y de la conclusión que hizo el tribunal en la misma.

SEGUNDO ERROR: Erró el TPI al no realizar un análisis jurisprudencial comparativo, según estableció nuestro más alto foro ni tomó en *Rodríguez v. Hospital*, 186 DPR 889 y *Santiago Montañez v. Fresenius Medical*, 195 DPR 476, pues utilizó dos casos que no se asemejan en nada, al de los Apelantes. Tampoco tomó en consideración las "circunstancias particulares del caso" de la Apelante según establece el Tribunal Supremo en *Sucs. Mena v. Jiménez Meléndez*, 2023 TSPR 108.

TERCER ERROR: Erró el TPI al no conceder indemnización por el 67% de impedimento sufrido por la Sra. Carmen Báez, establecido mediante prueba pericial no controvertida por la parte Apelada.

CUARTO ERROR: El TPI incurrió en error manifiesto, prejuicio y parcialidad cuando de forma arbitraria, le atribuyó al Apelado, Dr. Cruz Cestero, un 80% de negligencia que no se sostiene con la prueba desfilada.

QUINTO ERROR: Erró el TPI al no imponerle al Dr. Cruz Cestero y a sus aseguradoras, SIMED y PRMDI honorarios de abogado por temeridad.

En síntesis, la parte apelante sostuvo que el foro primario no tomó en consideración otros daños que alegadamente sufrió el señor Nazario Moreno y la señora Báez Rivera incluyendo el 67% de impedimento permanente que supuestamente sufrió esta última

---

[14] Apéndice del *Escrito de Apelación, Sentencia*, pág. 53.

como consecuencia del bloqueo. Además, arguyó que la única persona responsable por los daños alegados fue el doctor Cruz Cestero y que este, al igual que sus aseguradoras, actuaron temerariamente al no contestar una oferta transaccional que pudo haberle dado final al pleito de epígrafe.

Por su parte, el 6 de noviembre de 2024, la parte apelada presentó un *Alegato en Oposición a Apelación* en el que solicitó que confirmemos la *Sentencia* apelada. Consecuentemente, el doctor Cruz Cestero suplicó que validáramos las partidas otorgadas a la señora Báez Rivera y a la Sucesión del señor Nazario Moreno, inclusive los porcentajes de responsabilidad concedidos a él, al doctor Vazquez Pelyhe, y al Hospital, por ser conforme a derecho.

En adelante, pormenorizaremos el derecho aplicable a la controversia del recurso de epígrafe.

**III.**

**A.**

La glosa jurisprudencial ha resuelto que, los foros superiores no intervendrán con las determinaciones de hechos ni las adjudicaciones de credibilidad realizadas por el TPI, al menos que haya incurrido en error manifiesto, pasión, prejuicio o parcialidad. ***Rivera Menéndez v. Action Service***, 185 DPR 431, 444 (2012); ***Rivera Figueroa v. Autoridad de Acueductos y Alcantarillados de Puerto Rico***, 177 DPR 345, 356 (2009). De hecho, son pocos los casos en donde se ha concluido que el foro de instancia incurrió en pasión, prejuicio, parcialidad o error manifiesto. ***Dávila Nieves v. Meléndez Marín***, 187 DPR 750, 771 (2013).

Esta norma de deferencia judicial se apoya en que la tarea de apreciación de la prueba testifical está llena de elementos subjetivos y es el TPI quien está en mejor posición para aquilatarla. ***Sucn. Rosado v. Acevedo Marrero***, 196 DPR 884, 917 (2016); véase también, ***Dávila Nieves v. Meléndez Marín***, supra, pág. 771.

Cónsono con ello, cuando "[l]a evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que otra cosa se disponga por ley". Regla 110 (D) de Evidencia, 32 LPRA VI, R. 110; *Rivera Menéndez v. Action Service*, supra, pág. 444; *Rivera Figueroa v. Autoridad de Acueductos y Alcantarillados de Puerto Rico*, supra, pág. 357. Por su parte, los foros apelativos solo cuentan con "récords mudos e inexpresivos". *Rivera Torres v. Díaz López*, 207 DPR 636, 658 (2021).

Conforme a la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2, "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos". La intervención de un foro apelativo con la evaluación de la prueba testifical procede "'en casos en que un análisis integral de dicha prueba cause en nuestro ánimo una insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia'". *Rivera Figueroa v. Autoridad de Acueductos y Alcantarillas de Puerto Rico*, supra, pág. 356 (*citando* *Pueblo v. Cabán Torres*, 117 DPR 645, 648 (1986)). Por lo tanto, la parte apelante que cuestione una determinación de hechos realizada por el foro primario debe fundamentar la existencia de pasión, prejuicio o parcialidad, o error manifiesto. *Rivera Figueroa v. Autoridad de Acueductos y Alcantarillas de Puerto Rico*, supra, pág. 356; *Flores v. Soc. de Gananciales*, 146 DPR 45, 50 (1998).

Ahora bien, a pesar de la deferencia judicial, cuando las conclusiones de hecho del TPI están basadas en prueba pericial o documental, el tribunal revisor se encuentra en la misma posición que el foro recurrido. *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011). Ante tales circunstancias, el Tribunal Apelativo tendrá facultad para adoptar su propio criterio

con relación a la apreciación y evaluación de la prueba pericial, e incluso para descartarla, aunque resulte técnicamente correcta. *Íd.*; ***Municipio de Loíza v. Sucns. De Suárez et al.***, 154 DPR 333, 363 (2001).

## B.

De igual modo, la tarea judicial de estimación y valorización de daños es una difícil y angustiosa, y para lo cual no existe un sistema mecánico para llegar a un resultado exacto con el cual todas las partes queden satisfechas y complacidas. ***Santiago Montañez v. Fresenius Medical***, 195 DPR 476, 490 (2016); ***Blás v. Hosp. Guadalupe***, 146 DPR 267, 339 (1998); ***Rodríguez Cancel v. A.E.E.***, 116 DPR 443, 451 (1985). Nuestro más alto foro ha expresado que el TPI está en mejor posición que los tribunales apelativos para evaluar la estimación y valorización de daños, pues son los que tienen contacto con directo con la prueba. ***Blás v. Hosp. Guadalupe***, supra, pág. 339. De igual modo, este ejercicio de valorización de daños tiene cierto grado de especulación y elementos subjetivos como la discreción y el sentido de justicia y conciencia humana del juzgador de los hechos. ***Santiago Montañez v. Fresenius Medical***, supra, pág. 490. Por lo tanto, los tribunales apelativos no intervendrán con la decisión que emitan los foros primarios a menos que las cuantías concedidas sean ridículamente bajas o exageradamente altas. ***Santiago Montañez v. Fresenius Medical***, supra, pág. 490; ***Blás v. Hosp. Guadalupe***, supra, pág. 339.

## C.

Según dispone la Regla 44.1 (d) de Procedimiento Civil, *supra*, R. 44.1 (d), los honorarios de abogado se imponen cuando cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad. Además, la suma debe ser correspondiente a dicha conducta. *Íd.*

Nuestro Tribunal Supremo ha resuelto que la temeridad es aquellas "actuaciones en que un litigante promueve un pleito que pudo evitarse, que provoquen la prolongación indebida del trámite judicial o que obliguen a la otra parte a incurrir en gastos innecesarios para hacer valer sus derechos". ***Mena Pamias v. Jiménez Meléndez***, 212 DPR 758, 780 (2023); ***González Ramos v. Pacheco Romero***, 209 DPR 138, 148 (2022). El propósito de los honorarios de abogado es disuadir la litigación frívola y fomentar las transacciones mediante sanciones que compensen a la parte victoriosa los perjuicios económicos y las molestias producto de la temeridad de la otra parte. ***Marrero Rosado v. Marrero Rosado***, 178 DPR 476, 505 (2010); ***Montañez v. U.P.R.***, 156 DPR 395, 425 (2002). También tiene como fin penalizar a la parte que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconvenientes de un pleito. ***C.O.P.R. v. S.P.U.***, 181 DPR 299, 342 (2011); ***Torres Vélez v. Soto Hernández***, 189 DPR 972, 993 (2013).

Asimismo, nuestro máximo foro ha reconocido que una parte actúa temerariamente cuando (1) contesta la demanda y niega responsabilidad total pero posteriormente la acepta; (2) se defiende injustificadamente de la acción; (3) la cantidad solicitada es exagerada y la única razón que tiene para oponerse a las peticiones del demandante sin admitir francamente su responsabilidad, pudiendo limitar la controversia a la fijación de la cuantía a ser concedida; (4) se arriesga a litigar un caso del que se desprende *prima facie* su responsabilidad; y (5) niega un hecho que le consta es cierto a quien hace la alegación. ***C.O.P.R. v. S.P.U.***, supra, pág. 342 (*citando a* ***Blás v. Hosp. Guadalupe,*** supra, págs. 335-336).

Cónsono con lo anterior, la determinación de temeridad descansa en la sana discreción del TPI, y los tribunales apelativos

deben intervenir solo cuando surja claramente abuso de discreción. ***Mena Pamias v. Jiménez Meléndez***, supra, pág. 780; ***VS PR, LLC v. Drift-Wind, Inc.***, 207 DPR 253, 273 (2021).

## D.

La Regla 35.1 de Procedimiento Civil, *supra*, R. 35.1, tiene como propósito principal fomentar las transacciones. ***Ortiz Muñoz v. Rivera Martínez***, 170 DPR 869, 878 (2007). Constituye también un mecanismo procesal efectivo para reducir los costos de litigio, adelantar la pronta disposición de las reclamaciones judiciales y reducir la carga de los tribunales. *Íd.*; ***Ramallo Bros. Printing, Inc. v. Federal Exp. Corp.***, 129 DPR 499, 510 (1991). No obstante, no toda oferta transaccional constituye una oferta de sentencia conforme a los términos y condiciones de dicha regla, y, como consecuencia, conlleve la imposición de costas, gastos y honorarios de abogado para cuando se rechaza la oferta y no se obtiene una sentencia más favorable. ***Ortiz Muñoz v. Rivera Martínez***, supra, pág. 878. En lo pertinente, la Regla 35.1 de Procedimiento Civil, *supra*, dispone que:

> En cualquier momento antes de los veinte (20) días precedentes al comienzo del juicio, **la parte que se defiende de una reclamación podrá notificar a la parte adversa una oferta para consentir a que se dicte sentencia en su contra por la cantidad, por la propiedad o en el sentido especificado en su oferta, con las costas devengadas hasta ese momento.** La oferta deberá cumplir con los requisitos siguientes:
>
>> (1) Hacerse por escrito, notificando a la parte a quien se le hace mediante correo certificado.
>>
>> (2) Especificar quién hace la oferta y la parte a la que va dirigida.
>>
>> (3) Establecer la cantidad, si alguna, que se ofrece en concepto de daños.
>>
>> (4) Especificar la cantidad total o propiedad y condiciones ofrecidas.
>>
>> (5) Establecer la cantidad en concepto de costas devengadas hasta el momento.
>
> Si dentro de los diez (10) días siguientes a la notificación la parte adversa notifica por escrito que acepta la oferta, cualquiera de las partes podrá presentarla junto

con la notificación de su aceptación y la prueba de su notificación, y entonces el Secretario o Secretaria del tribunal dictará sentencia. **Si no es aceptada así, se considerará retirada y no se admitirá en evidencia, excepto en un procedimiento para determinar costas, gastos y honorarios de abogado o abogada, o en un procedimiento para obligar al cumplimiento de una sentencia dictada, producto de una oferta de sentencia.**

**En todo caso en que la sentencia que obtenga finalmente la parte a quien se le hizo la oferta sea igual o menos favorable, ésta tendrá que pagar las costas, los gastos y los honorarios de abogado o abogada en que se incurrió con posterioridad a la oferta.**

. . . .

(Énfasis suplido).

La antedicha regla sólo contempla las ofertas que hace la parte que se defiende de una reclamación, entiéndase, el demandado, tercero demandado, demandado contra coparte y la parte reconvenida, incluyendo la contrademandada. ***Ortiz Muñoz v. Rivera Martínez***, supra, pág. 878. Por lo tanto, "una oferta formal de transacción por parte del demandante, *que no se defiende de una reclamación*, no constituye una oferta de sentencia al amparo de los términos de la Regla 35.1 de Procedimiento Civil, ante, y, por ende, su rechazo no conlleva la imposición de las costas, gastos y honorarios de abogado dispuestos en dicha regla". *Íd.*, pág. 879. (Énfasis en el original).

**IV.**

En el caso de marras debemos resolver si el foro primario incurrió en error manifiesto en la apreciación de la prueba de daños. Lo anterior al omitir determinaciones de hechos que se apoyaban en la prueba pericial y testimonial de la señora Báez Rivera, el doctor Rojas Rodríguez y el señor Nazario Moreno; y si dicho foro utilizó jurisprudencia que no concordaba con los hechos y las circunstancias del caso de autos como parte del análisis y valorización de daños. También nos corresponde resolver si el doctor Cruz Cestero era responsable en un 90% por su negligencia, en

lugar de un 80%, y si dicho médico, al igual que sus aseguradoras, actuaron temerariamente.

Tras aquilatar la abundante prueba desfilada, a juicio del TPI, el doctor Cruz Cestero fue responsable en un 80%, el doctor Vázquez Pelyhe en un 15% de responsabilidad, y el Hospital debía responder en un 5% por los daños sufridos por la señora Báez Rivera y el señor Nazario Moreno.

En desacuerdo, la parte apelante argumentó que el foro primario no tomó en cuenta toda la prueba de daños del señor Nazario Moreno y de la señora Báez Rivera incluyendo la determinación de impedimento permanente atribuible a esta, para la cual indicó la parte apelante que el TPI no otorgó indemnización alguna. También expuso la parte apelante que la única persona responsable por los daños fue el doctor Cruz Cestero, y que el foro primario no incluyó determinaciones de hecho ni explicación para justificar la distribución de negligencia del Hospital San Cristóbal y el doctor Vázquez Pelyhe. Por último, la parte apelante planteó que el foro primario incidió al no utilizar la jurisprudencia aplicable para realizar la valorización de daños, y al no imponerles al doctor Cruz Cestero y a sus aseguradoras honorarios de abogado tras no contestar una oferta transaccional cursada al doctor Cruz Cestero.

Por su parte, la parte apelada adujo que las determinaciones de hechos de la *Sentencia* apelada incluyeron las condiciones físicas de la señora Báez Rivera y están basadas en la prueba desfilada. En cuanto al porcentaje de impedimento, expuso que del informe pericial preparado por el doctor Rojas Rodríguez no se desprendía el 67%. Por otro lado, arguyó la parte apelada que, de la demanda, el informe pericial y el testimonio del doctor Rojas Rodríguez se desprendían señalamientos e imputaciones de negligencia en cuanto al Hospital y el doctor Vázquez Pelyhe que justificaban las porciones de responsabilidad impuestas a ambos. Por último, la parte apelada

alegó que el foro primario no abusó de su discreción al no adjudicarle temeridad.

Tras un análisis objetivo, sereno y cuidadoso del expediente del caso y de la voluminosa TPO, en correcta práctica adjudicativa apelativa, resolvemos que el TPI no incidió en los errores señalados. La *Sentencia* apelada es correcta en derecho y se fundamenta en la prueba desfilada ante sí.

Discutiremos los primeros tres señalamientos de error en conjunto por estar relacionados entre sí; a saber, si el foro primario omitió determinaciones de hechos sobre los daños sufridos por el señor Nazario Moreno y la señora Báez Rivera incluyendo el 67% de impedimento permanente alegado; y si el foro primario utilizó la jurisprudencia aplicable para la valorización de daños.

De un examen sosegado de la prueba desfilada ante sí, el foro primario estimó correctamente los daños sufridos por la señora Báez Rivera, tras haberse sometido al procedimiento del bloqueo. Así se deprende de la TPO. El foro juzgador reconoció adecuadamente que estos daños fueron cambios neurológicos de paraplejia - las extremidades inferiores paralizadas; monoparesis -pérdida de fuerza- en la extremidad superior izquierda; fue dada de alta en silla de ruedas y transferida en ambulancia a un hogar de envejecientes, donde permaneció por aproximadamente mes y medio, y recibió terapias; y tuvo problemas con la orina, la cual salía involuntariamente, y utilizó pañales. De igual modo, la señora Báez Rivera no podía levantar sus brazos, ni guiar ni tampoco sostener relaciones sexuales con su esposo. Ante todo lo anterior, el foro *a quo* valorizó todos los daños de la señora Báez Rivera por la cantidad de $100,000.00, luego de utilizar dos casos como guía; uno de estos siendo, **Colón Díaz v. Continental Lord Communication** con el alfanumérico KLAN9600937. Advirtió también que los daños que experimentó la señora Báez Rivera fueron mayores a los abarcados

en los precedentes que utilizó como punto de partida para la valorización de dichos daños.

En ***Colón Díaz v. Continental Lord Communication***, supra, la señora Margaret Colón Díaz (señora Colón Díaz) sufrió un accidente automovilístico por el que resultó con lesiones. Por estas, recibió tratamiento de terapia física de rehabilitación y sufrió una incapacidad parcial permanente de sus funciones fisiológicas generales. En lo pertinente, el foro primario ordenó el pago solidario de $20,000.00 en concepto de incapacidad parcial permanente, y $50,000.00 por daños físicos y angustias mentales a favor de la señora Colón Díaz. Sin embargo, este Tribunal modificó las partidas por ser excesivas, a tenor con los hechos particulares de dicho caso, en vista de la prueba médica y la jurisprudencia utilizada para alcanzar dicha determinación. En cambio, otorgó una sola suma por la cantidad de $30,000.00 en concepto de la incapacidad, los daños físicos y las angustias mentales.

En el presente caso, si bien de la determinación de hecho número 307 se desprende que el doctor Rojas Rodríguez admitió que de su informe pericial no surgió el 67% de impedimento permanente neurológico alegado por la señora Báez Rivera,[15] el foro primario utilizó como fundamento a ***Colón Díaz v. Continental Lord Communication***, supra, en el cual se concedió una partida para el impedimento, los daños físicos y las angustias mentales. Por esa razón, contrario a lo alegado por la parte apelante, el análisis jurídico realizado por el TPI incluyó el impedimento permanente reclamado por la señora Báez Rivera.

Por otra parte, la *Sentencia* apelada del foro *a quo* adoptó, en esencia, los mismos daños que propuso la parte apelante como los que experimentó el señor Nazario Moreno. Puntualizó que el esposo

---

[15] *Íd.*, pág. 31; *Íd., Informe Pericial,* págs. 347-355.

de la señora Báez Rivera la acompañó a las citas médicas. También estuvo presente cuando ella despertó posterior al procedimiento del bloqueo y pidió asistencia cuando ella no respondió. El señor Nazario Moreno también llegaba temprano al hogar de envejecientes donde estuvo su esposa por mes y medio, y la asistió en su cuidado. Ante dichos daños, el foro primario le concedió al señor Nazario Moreno una suma de $15,000.00 en concepto de sufrimientos y angustias mentales. Señaló el foro primario que le otorgó al señor Nazario Moreno una cantidad mayor a las partidas otorgadas en *Colón Díaz v. Continental Lord Communication*, supra, en donde otorgaron $5,054.79; y *Semidey et al. v. Fcia. Belmonte et al.*, 211 DPR 222 (2023), en el que concedieron $8,500.00, por las circunstancias particulares del caso de marras.

Como pormenorizamos anteriormente, las determinaciones de hecho y las valorizaciones de daños del foro primario merecen deferencia judicial. Este Tribunal no debe intervenir con las determinaciones de hechos y adjudicaciones de credibilidad realizadas por el foro primario, al menos que haya incurrido en error manifiesto, pasión, prejuicio o parcialidad. De igual modo, no podemos intervenir con las valorizaciones de daños que emite el TPI a menos que las cuantías concedidas sean ridículamente bajas o exageradamente altas, lo que no ocurre en este caso. Lo anterior, pues ambos ejercicios conllevan elementos subjetivos y es el foro primario quien tiene contacto directo con la prueba.

En relación al cuarto señalamiento de error, no fue cometido. La determinación del 80% de la negligencia atribuida al Dr. Cruz Cestero encuentra amplio apoyo en la evidencia desfilada, según surge de la TPO.

En el caso de marras, el foro primario realizó el análisis jurídico atinado y, por ende, no intervendremos con las determinaciones de hechos, la valorización de daños y las cuantías

concedidas a favor de la parte apelante. Las mismas encuentran apoyo en la evidencia desfilada.

Respecto al quinto señalamiento de error propuesto por la parte apelante, este no encuentra apoyo en derecho. Sostuvo la parte apelante que la parte recurrida debía pagar $25,000.00 en honorarios de abogados e intereses desde la radicación de la demanda por no haber contestado una oferta transaccional que le cursó al doctor Cruz Cestero. Tal como expusimos precedentemente, la Regla 35.1 de Procedimiento Civil, *supra*, se activa solo cuando la oferta formal de transacción es realizada por la parte que se defiende. En el presente caso, fue la propia parte demandante, y, por ende, la parte que no se defiende, quien realizó la oferta transaccional. Ante ello, resulta forzoso concluir que el no contestar o incluso rechazar dicha oferta no conlleva la imposición de costas, gastos y honorarios de abogado. Por ende, el foro primario no erró al no ordenar dicho pago por temeridad.

La determinación recurrida es conforme a derecho y encuentra fundamento en la prueba desfilada ante sí.

**V.**

Por todo lo antes expuesto, se *confirma* la *Sentencia* apelada.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones