Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XII

| GLENDALIZ MERCADO SOTO Y OTROS<br><br>Parte Apelante<br><br>v.<br><br>GROUP PEDIATRIX MEDICAL, ET ALS<br><br>Parte Apelada<br><br><br>GLENDALIZ MERCADO SOTO Y OTROS<br><br>Parte Apelante<br><br>v.<br><br>DR. FRANCISCO ZAMORA ECHEVARRIA<br><br>Parte Apelada | TA2025AP00643 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Mayagüez<br><br><br><br>Civil núm.: MZ2020CV00675 consolidado con MZ2021CV01173<br><br><br>Sobre: Impericia Médica |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli.

Trigo Ferraiuoli, jueza ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 29 de enero de 2026.

Comparecen los apelantes, Glendaliz Mercado Soto, Josué Valentín Morales, por sí y en representación de la sociedad legal de gananciales compuesta por ambos, así como en representación del menor de edad L.G.V.M. (en adelante los apelantes), y solicitan que revoquemos la *Sentencia Parcial*[1] .emitida y notificada el 5 de noviembre de 2025, por el Tribunal de Primera Instancia, Sala de Mayagüez. Mediante el referido dictamen, el TPI desestimó la demanda), con perjuicio, en cuanto a CIMA HMO, Corp. (CIMA o parte apelada), en virtud de la Regla 10.2 de Procedimiento Civil.

---

[1] Entrada Núm. 465.

Asimismo, el TPI denegó la *Moción de Desistimiento con Perjuicio previo Celebración de Autorización Judicial* presentada por los apelantes y le impuso a los apelantes $5,000 en honorarios de abogado.

La parte apelada, CIMA, presentó su alegato en oposición al recurso el 27 de diciembre de 2025.

Evaluados los alegatos de las partes, y por los fundamentos que exponemos a continuación, confirmamos la *Sentencia Parcial apelada.*

## I.    Trasfondo fáctico y procesal

El 31 de julio de 2020, los apelantes presentaron una demanda[2] sobre daños y perjuicios por impericia médica en contra del Dr. Francisco Zamora Echevarría (doctor Zamora Echevarría), CIMA Medical Group (CIMA), el Hospital San Antonio (Hospital), el Gobierno Municipal de Mayagüez (Municipio de Mayagüez), sus aseguradoras y otros. En esta, reclamaron los daños sufridos por la alegada negligencia en los servicios provistos por el doctor Zamora Echevarría, tanto en el *cuidado prenatal* ofrecido en las instalaciones de CIMA como en los servicios provistos *durante el parto* del menor L.G.V.M. en el Hospital. Arguyeron que la negligencia en los servicios y cuidados provistos, resultaron en que el menor sufriera insuficiencia respiratoria lo que le causó daño cerebral irreversible y que el menor esté total y permanentemente incapacitado.

El 27 de enero de 2021, CIMA contestó la demanda[3]. Como primera defensa, alegó que la demanda no exponía hechos que justificaran la concesión de un remedio a favor de los demandantes y en contra de CIMA. Añadió que no tenía relación comercial con ninguno de los codemandados, que los doctores no son sus

---

[2] Entrada Núm. 1. Vale señalar que, la demanda se enmendó en dos ocasiones. Véase entradas 30, 70, 99 y 100 de SUMAC.
[3] Entrada Núm. 26.

empleados, ni contratistas independientes y que tampoco existía nexo causal. En la alternativa de que existiera alguna conducta de negligencia por su parte, lo cual negó, CIMA expresó que no existía nexo causal entre dichos actos y los alegados daños en la demanda. Por último, se reservó el derecho de levantar cualquier defensa afirmativa que adviniera en conocimiento mediante el descubrimiento de prueba o investigación adicional.

Acaecidas numerosas incidencias procesales, y luego de concluido el descubrimiento de prueba, el 2 de septiembre de 2025, CIMA presentó *Moción Solicitando la Desestimación de la Demanda en Cuanto a CIMA HMO, CORP., se refiere conforme a la Regla 10.2 de las de Procedimiento Civil y se imponga sanciones a la parte demandante por temeridad*[4]. En primer lugar, expuso que, se dedica a proveer servicios de medicina primaria a pacientes médicos indigentes en el Municipio de Isabela, los cuales provee exclusivamente a través de médicos contratados por servicios profesionales y que no provee servicios de cuidado prenatal. Destacó que no tiene relación alguna con el doctor Zamora Echevarría ni con ninguno de los otros codemandados.

Alegó que, concluido el descubrimiento de prueba el 16 de agosto de 2025, el TPI, aun dando como ciertos todos los hechos que alegan los apelantes, estaba en posición de determinar que la demanda contra CIMA no exponía una reclamación que justifique la concesión de un remedio, por lo que procedía la desestimación.

En ese sentido, CIMA expuso que, del informe pericial de la parte demandante, surge que la negligencia alegada se le atribuye directamente al doctor Zamora Echevarría *durante el parto* y que, en dicho informe no existe alegación o afirmación de que CIMA fue

---

[4] Entrada Núm. 443. Junto con su escrito, el Hospital acompañó el Informe Pericial del perito de los demandantes (Anejo 1) y la Contestación a requerimiento de admisiones (Anejo 2).

negligente o se desvió de la mejor práctica de la medicina. Por ello, argumentó que los apelantes no tenían ninguna prueba pericial para sustentar sus alegaciones. Añadió que no participó durante el parto del menor a través de sus empleados, agentes y/o contratistas independientes.

En segundo lugar, CIMA alegó que los apelantes actuaron de forma temeraria al instar la reclamación en su contra, pues los apelantes debieron conocer desde la radicación de la demanda que no existía nexo causal entre los daños alegados y CIMA. Sobre el particular, añadió que, de los apelantes no conocer la falta del nexo causal al momento de presentar la demanda, estos advinieron en conocimiento a través del informe que rindió su perito desde el 6 de mayo de 2021. Por ello, arguyeron que, tan pronto los apelantes recibieron dicho informe, debieron desistir de su reclamación contra CIMA. La parte apelada enfatizó que los apelantes obstinada y temerariamente continuaron haciendo que tuviera que defenderse contra unas alegaciones frívolas al punto que hubo que esperar a que concluyera el descubrimiento de prueba para estos poder presentar su solicitud de desestimación. Por ello, solicitaron se desestimara la demanda y se le impusiera a los apelantes honorarios por temeridad.

El 14 de octubre de 2025, los apelantes presentaron una *Moción de Desistimiento con Perjuicio previo Celebración de Autorización Judicial*[5]. En resumen, estos expresaron que la solicitud de desestimación de CIMA incumplía crasamente con los requisitos de la Regla 36 de Procedimiento Civil[6], por lo que debía denegarse. En otro extremo, los apelantes expusieron que estaban en posición de

---

[5] Entrada Núm. 451.
[6] En específico, alegó que CIMA no expuso hechos incontrovertidos y no hizo referencia específica a los párrafos de documentos que establecen que no existe controversia.

desistir con perjuicio en cuanto a CIMA, pero que era necesario señalar una vista de autorización judicial[7].

El 20 de octubre de 2025, CIMA presentó oposición a la solicitud de desistimiento con perjuicio y reiterando su solicitud de desestimación bajo la Regla 10.2[8]. En síntesis, expuso que, contrario a lo alegado por los apelantes, la solicitud de desestimación se hizo al amparo de la Regla 10.2, y no bajo la Regla 36 de Procedimiento Civil. De otra parte, señaló que, al solicitar desistimiento con perjuicio, los apelantes reconocieron que no procedía la reclamación contra CIMA. Además, argumentó que no procedía la celebración de una vista de autorización judicial previo al desistimiento, pues no se estaba determinando cuantía alguna de transacción en favor del menor, toda vez que no existía nexo causal entre CIMA y los daños alegados en la demanda. En ese sentido, la parte apelada señaló que la solicitud de desistimiento era un intento de los apelantes para evitar la imposición de honorarios por temeridad, pues desde el 6 de mayo de 2021, estos conocieron a través del informe pericial de su perito que CIMA no había sido negligente en los daños reclamados. Aun así, lo mantuvo en el pleito innecesariamente, lo que ocasionó que CIMA incurriera en gastos innecesarios en su defensa.

Así las cosas, el 5 de noviembre de 2025, el TPI emitió y notificó la *Sentencia Parcial*[9] apelada. En esta emitió 15 determinaciones de hecho[10] en cuanto a la desestimación solicitada por CIMA, de las cuales transcribimos las atinentes a la controversia ante nos:

> 3. "El cuidado prenatal de Glendaliz Mercado Soto estuvo a cargo del obstreta ginecólogo Dr. Francisco Zamora Echevarría. El tratamiento prenatal ofrecido fue negligente

---

[7] Lo anterior, bajo el argumento de que, entre los demandantes había un menor de edad.

[8] Entrada Núm. 457.

[9] Entrada Núm. 465.

[10] *Íd.* En el dictamen apelado, el foro primario consignó que se emitían las determinaciones de hecho "toman[do] como ciertos para beneficio de la parte demandante en relación con la solicitud de la desestimación de la demanda radicada por CIMA...".

y fue la causa de los daños reclamados en la Demanda..."
Véase, Segunda Demanda Enmendada, párrafo 18 a la página 4.

4. "El codemandado Dr. Francisco Zamora también estuvo a cargo del parto de la paciente. También el codemandado Dr. Francisco Zamora en la atención del parto vaginal incurrió en negligencia. Refirió a la paciente al Hospital San Antonio de Mayagüez sin haberla examinado ni evaluado adecuadamente..." Véase, Segunda Demanda Enmendada, párrafo 20 a la página 4.

5. "El codemandado Dr. Francisco Zamora negligentemente no ordenó el monitoreo de la oxigenación de la paciente y su bebé. Esto provocó el daño cerebral irreversible que tiene Lucas Gabriel Valentín Mercado..." Véase, Segunda Demanda Enmendada, párrafo 23 a la página 5.
....
12. La parte demandante contrató al Dr. José A. Gratacós Dias para probar la negligencia alegada en la demanda.

13. En la página 10 de su informe, el Dr. Gratacós menciona lo siguiente:

"La condición crítica en que nació el bebé de la Sra. Glendaliz Mercado Soto y los daños neurológicos severos que ha mostrado el bebé durante su desarrollo son el resultado directo de la desviación en la buena práctica de la medicina incurrida por el Dr. Francisco Zamora y por el personal de enfermería de la Sala de Partos del Hospital San Antonio de Mayagüez referente al monitoreo del latido cardiaco fetal intraparto."

14. Posteriormente, el Dr. Gratacós señala en su informe lo siguiente en la página número 10:

[...]

Tanto el Dr. Zamora, como el personal de enfermería de la Sala de Partos del Hospital San Antonio de Mayagüez son responsables de la condición en que nació este bebé y de los daños que ha presentado al no monitorear adecuadamente la segunda fase del parto de la Sra. Glendaliz Mercado. La evaluación de los trazados fetales hasta las 3:05 pm del 2 de agosto de 2019 no nos daría una explicación científica compatible con la condición crítica en que nació el bebé. Esto nos lleva a concluir que el insulto hipóxico que sufrió el bebé ocurrió luego de que se desconectó el monitor fetal y durante los 45 minutos hasta el momento del nacimiento. Esto se pudo haber prevenido si el monitoreo del latido cardiaco fetal se hubiese continuado hasta el momento del nacimiento de forma tal que, al identificar los primeros episodios de compromiso fetal, se hubiese podido acelerar el nacimiento del bebé.

15. No existe alegación o afirmación del Dr. Gratacós en su único informe de que CIMA fue negligente o se desvió de la mejor práctica de la medicina.

A la luz de lo antes expuesto, el TPI determinó que, aun dando como ciertos todos los hechos alegados en la demanda, esta no expone una reclamación que justifique la concesión de un remedio a favor de los apelantes y en contra de CIMA. Añadió que no existía controversia de que el doctor Zamora Echevarría no es empleado, agente ni contratista independiente de CIMA, como tampoco la apelada tiene relación con el resto de los codemandados en el caso. Asimismo, el TPI concluyó que, del informe pericial de los apelantes, no surge negligencia alguna relacionada a CIMA. Por tal razón, el foro primario determinó que estaba impedido de imponerle responsabilidad por los daños reclamados. Concluyó que no existía nexo causal entre cualquier daño que hayan podido sufrir los apelantes y las actuaciones de CIMA, procediendo entonces la desestimación de la demanda contra la apelada.

Además, el TPI concluyó que los demandantes fueron temerarios al no haber solicitado el desistimiento en cuanto a CIMA, tan pronto recibieron el informe de su perito el 6 de mayo de 2021, obligando así al Hospital a defenderse por un término de cuatro (4) años. Consecuentemente, el TPI desestimó con perjuicio la demanda en cuanto a CIMA, declaró sin lugar la solicitud de desistimiento y les impuso a los apelantes $5,000 en honorarios de abogado.

Inconformes, los demandantes acudieron ante nos y formularon los siguientes señalamientos de error:

PRIMER SEÑALAMIENTO DE ERROR:

Erró el Tribunal de Primera Instancia al declarar Con Lugar una Moción de Desestimación al amparo de la Regla 10.2 de Procedimiento Civil y dictar Sentencia Parcial desestimando con perjuicio la reclamación contra CIMA.

SEGUNDO SEÑALAMIENTO DE ERROR:

Erró el Tribunal de Primera Instancia al negarse a ordenar la celebración de una vista de autorización judicial para atender una Moción de Desistimiento con perjuicio.

TERCER SEÑALAMIENTO DE ERROR:

Erró el Tribunal de Primera Instancia al concluir que hubo temeridad e imponer a los apelantes el pago de $5,000.00 por concepto de honorarios de abogado.

El 27 de diciembre de 2025, CIMA presentó su alegato en oposición. En síntesis, plantea que procede la confirmación del dictamen apelado, toda vez que, conforme al informe pericial de los apelantes, no surge alegación alguna relacionada con CIMA. Lo anterior, pues la opinión pericial determinó que los daños sufridos por los apelantes fueron consecuencia de las actuaciones del doctor Zamora Echevarría *durante el nacimiento* del menor en la sala de partos del Hospital San Antonio de Mayagüez, y no durante el cuidado prenatal de la demandante. En cuanto a la solicitud de desistimiento, CIMA afirma que la solicitud de los apelantes no cumple con la Regla 39.1(a), pues estos presentaron el desistimiento, pasados cuatro (4) años de que CIMA presentara su alegación responsiva, por lo que la solicitud de desistimiento presentada debió hacerse bajo la Regla 39.1(b), la cual requiere orden judicial. Por último, CIMA sostiene que el extenso tracto procesal del caso demuestra que los apelantes lo obligaron a defenderse, aun cuando estos conocían desde el 2021 que no existía nexo causal entre los daños reclamados y CIMA, por lo que alegan que el TPI no abusó de su discreción al imponer los honorarios de abogado.

Con el beneficio de la comparecencia de las partes, estamos en posición de resolver.

## II.    Exposición del Derecho

### A. La Regla 10.2 de Procedimiento Civil

La Regla 10.2 de Procedimiento Civil[11], permite que un demandado en una demanda, reconvención, demanda contra coparte, o demanda contra tercero, solicite al tribunal la

---

[11] 32 LPRA Ap. V, R. 10.2.

desestimación de las alegaciones en su contra. La mencionada regla establece lo siguiente:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva **excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:**
> (1) falta de jurisdicción sobre la materia;
> (2) falta de jurisdicción sobre la persona;
> (3) insuficiencia del emplazamiento;
> (4) insuficiencia del diligenciamiento del emplazamiento;
> **(5) dejar de exponer una reclamación que justifique la concesión de un remedio;**
> (6) dejar de acumular una parte indispensable.[12]

A los fines de disponer de una moción de desestimación por el fundamento de que la demanda no expone una reclamación que justifique la concesión de un remedio, los tribunales vienen obligados a tomar como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente, y considerarlos de la manera más favorable a la parte demandante.[13] Dentro del ejercicio de su discreción, el foro primario no deberá desestimar la demanda a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación.[14] Es decir, la desestimación procede cuando de los hechos bien alegados en la demanda no se puede identificar una relación entre los hechos alegados y el derecho sustantivo que genera la responsabilidad del demandado hacia el demandante.[15] Cónsono con lo anterior, a pesar de interpretar liberalmente la demanda, corresponde la desestimación si no hay remedio alguno disponible en nuestro estado de derecho.[16]

---

[12] *Íd.* (Énfasis suplido).
[13] *Costas Elena y otros v. Magic Sport y otros,* 213 DPR 523, 533 (2024); *Eagle Security v. Efrón Dorado et al,* 211 DPR 70, 78 (2023); *Cobra Acquisitions v. Mun. de Yabucoa et al.,* 210 DPR 384, 396 (2022); *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank,* 193 DPR 38, 49 (2015); *Colón Rivera et al. v. ELA,* 189 DPR 1033, 1049 (2013).
[14] *Consejo de Titulares v. Gómez Estremera et al.,* 184 DPR 407, 423 (2012); *Pressure Vessels P.R. v. Empire Gas P.R.,* 137 DPR 497, 505 (1994).
[15] *Torres, Torres v. Serrano Torres,* 179 DPR 481, 501 (2010).
[16] *Ortiz Matías et al. v. Mora Development,* 187 DPR 649, 654 (2013).

Por consiguiente, es necesario considerar si, a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida.[17] Así pues, para que un demandado prevalezca cuando presente una moción de desestimación al amparo de la Regla 10.2 (5), *supra,* debe establecer con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que pueda probarse en apoyo a su reclamación, aun interpretando la demanda de la forma más liberal posible a su favor.[18]

### B. Desistimiento

El desistimiento es una declaración de voluntad que realiza una parte en el pleito mediante la cual anuncia su deseo de no continuar con la reclamación que interpuso.[19]

La Regla 39.1 de Procedimiento Civil, 32 LPRA Ap. V, R.39.1, reglamenta las diferentes formas de desistimiento de las reclamaciones judiciales en el ámbito civil. El precepto distingue entre el desistimiento por parte del reclamante y aquel decretado por orden del tribunal.

El inciso (a) de la Regla 39.1, *supra,* establece que el demandante puede renunciar a su demanda en cualquier momento previo a la notificación de la contestación de la parte adversa o de una solicitud para que se dicte sentencia sumaria. También dispone que el desistimiento pudiera darse por una estipulación firmada por todos los que hayan comparecido al pleito. Al amparo de cualquiera de las dos instancias de este inciso, es suficiente la mera

---

[17] *Costas Elena y otros v. Magic Sport y otros,* supra, pág. 534; *Eagle Security v. Efrón Dorado et al,* supra, pág. 78; *Cobra Acquisitions v. Mun. de Yabucoa et al.,* supra, pág. 396; *Pressure Vessels P.R. v. Empire Gas P.R.,* supra, pág. 505.
[18] *Costas Elena y otros v. Magic Sport y otros,* supra, pág. 534.
[19] *Pagán Rodríguez v. Pres. Cáms. Legs,* 206 DPR 277, 285 (2021).

presentación del aviso de desistimiento ante el tribunal.[20] Además, nada impide que el demandante pueda demandar nuevamente.[21]

Sin embargo, bajo el inciso (a) de la Regla 39.1, *supra*, "el aviso de desistimiento tendrá el efecto de una adjudicación sobre los méritos cuando lo presentare un demandante que haya desistido anteriormente en el Tribunal General de Justicia, o en algún Tribunal Federal o de cualquier Estado de los Estados Unidos, de otro pleito basado en o que incluya la misma reclamación".

Por otro lado, el inciso (b) de la Regla 39.1, *supra*, atiende las instancias no cubiertas por el inciso (a) de la regla. Es decir, cuando la parte adversa ha contestado la demanda o ha solicitado que se dicte sentencia sumaria, o cuando no se ha conseguido una estipulación de desistimiento suscrita por todas las partes que han comparecido al pleito. En estos casos, será necesario que el demandante presente una moción al tribunal, la cual deberá notificar a todas las partes que han comparecido ante el foro, para así renunciar a continuar con su reclamo. En este escenario, el tribunal tiene discreción judicial para terminar el litigio e imponer las condiciones que estime pertinentes. Ello incluye que el desistimiento sea con perjuicio e incluso que se ordene el pago de costas y honorarios de abogado.[22] Aun así, conforme al citado inciso (b), "[a] menos que la orden [aceptando el desistimiento] especifique lo contrario, un desistimiento bajo este párrafo será sin perjuicio". Regal 39.1 (b), *supra*.

**C. Honorarios**

De otra parte, tanto la imposición de honorarios de abogado, como el interés por temeridad responden y tienen como propósito disuadir la litigación innecesaria y alentar las transacciones

---

[20] *Íd.*, págs. 286-287.
[21] *Íd.*, pág. 287; *Pramco CV6, LLC. v. Delgado Cruz y otros*, 184 DPR 453, 459 (2012).
[22] *Pagán Rodríguez v. Pres. Cáms. Legs*, supra, pág. 287; *Pramco CV6, LLC. v. Delgado Cruz y otros*, supra, pág. 461.

mediante la imposición de sanciones a la parte temeraria que compensen los perjuicios económicos y las molestias sufridas por la otra parte. *Montañez v. U.P.R.*, 156 DPR 395, 425 (2002). Según nuestro Más Alto Foro, la temeridad es "aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesariamente o que obliga que la otra parte incurra en gestiones evitables". *Marrero Rosado v. Marrero Rosado*, 178 D.P.R. 476, 504 (2010). Por ello, la temeridad es una conducta que afecta el buen funcionamiento de los tribunales y la administración de la justicia. *Torres Montalvo v. Gobernador ELA*, 194 DPR 760, 778 (2016).

Sin embargo, la determinación de si una parte obró con temeridad descansa en la sana discreción del juez sentenciador. *C.O.P.R. v. S.P.U.*, 181 DPR 299, 342 (2011). A esos efectos, una vez se determina la existencia de temeridad, el tribunal deberá tomar en cuenta una serie de factores para poder calcular la cantidad que concederá, a saber: "(1) el grado de temeridad; (2) el trabajo realizado; (3) la duración y naturaleza del litigio; (4) la cuantía involucrada; y (5) el nivel profesional de los abogados. *C.O.P.R. v. S.P.U. v. S.P.U.*, supra. Dicho lo anterior, a nivel apelativo, la determinación de imponer honorarios de abogado no será revisada a menos que el tribunal *a quo* se haya excedido en su discreción. *CNA Casualty of P.R. v. Torres Díaz*, 141 DPR 27, 44 (1996).

En cuanto a los honorarios de abogado, la Regla 44.1(d) de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V, R. 44.1, establece que estos procederán cuando el tribunal sentenciador determina que una parte o abogado ha actuado con temeridad o frivolidad. En específico, la referida disposición establece lo siguiente:

> (d) Honorarios de abogado. En caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al o a la responsable el pago de una suma por

concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta.

### III.　Aplicación del derecho a los hechos

En su recurso, los apelantes plantean que el foro primario erró al desestimar la causa de acción contra CIMA bajo la Regla 10.2 de Procedimiento Civil, denegar su solicitud de desistimiento e imponerles honorarios por temeridad. Por estar estrechamente relacionados, discutiremos los señalamientos de error de forma conjunta.

Primero, entre las defensas levantadas en su contestación a la demanda en 2021, CIMA expuso que no existía nexo causal, que la demanda no exponía una reclamación que justificara la concesión de un remedio a favor de los apelantes y en contra de CIMA y se reservó levantar cualquier otra defensa que surgiera luego del descubrimiento de prueba o investigación adicional. Así las cosas, el 6 de mayo de 2021, el perito de los apelantes, el doctor Gratacós, rindió su informe pericial en el que concluyó que los daños sufridos por el menor fueron resultado de la negligencia incurrida *durante el parto* por el doctor Zamora Echevarría y el personal de enfermería del Hospital San Antonio. Conforme expuso el foro *a quo*, y aun dando por cierto los hechos alegados en la demanda, lo cierto es que no existe una reclamación que justifique la concesión de un remedio en cuanto a CIMA se refiere. Lo anterior queda respaldado por el informe pericial de los demandantes y el hecho de que CIMA no tiene relación con el doctor Zamora Echevarría y demás codemandados del caso.

En segundo lugar, los apelantes alegan que el TPI incidió al negarse a celebrar una vista de autorización judicial para atender la solicitud de desistimiento con perjuicio presentada por los apelantes. Veamos.

Según esbozado, la Regla 39.1 (b), *supra*, provee, en los casos en que la parte adversa haya contestado la demanda, a que ésta desista de un pleito solo por orden del tribunal. En este escenario, el tribunal tiene la discreción para finalizar el pleito e imponer las condiciones que estime pertinentes, incluyendo que el desistimiento sea con perjuicio, así como la imposición de gastos y honorarios de abogado. La regla permite que en estos casos los tribunales impongan aquellas condiciones que resulten convenientes conforme a las circunstancias del pleito.

Según se desprende de las alegaciones de la demanda, los apelantes instaron la causa de acción basados en que CIMA era responsable por el tratamiento prenatal ofrecido por el doctor Zamora Echevarría. Por su parte, CIMA, desde la contestación a la demanda, así también como en la vista de estatus celebrada el 14 de diciembre de 2022[23], reiteró su alegación de que los apelantes adolecían de una causa de acción en su contra. Sin embargo, a pesar de haber recibido el informe pericial de su perito desde el 6 de mayo de 2021, el cual no le imponía alegación o afirmación de que CIMA fue negligente, los apelantes no solicitaron el desistimiento de la causa de acción instada contra CIMA hasta pasados cuatro años y cinco meses—y con posterioridad a que CIMA presentara su solicitud de desestimación. Aún más, en su solicitud los apelantes pretendieron supeditar la solicitud de desistimiento con perjuicio a la celebración de una vista de autorización judicial.

Conforme expusimos anteriormente, en estas circunstancias, aplica lo preceptuado en la Regla 39.1(b), por lo que la determinación de conceder el desistimiento descansa en la discreción del foro primario. Por ente, al evaluar la solicitud de desistimiento condicionada a una vista de autorización judicial

---

[23] Véase *Sentencia Parcial,* Entrada 465, página 10.

frente a la solicitud de desestimación presentada por CIMA, concluimos que el TPI actuó correctamente al desestimar la demanda contra esta bajo la Regla 10.2. Lo anterior, porque quedó demostrado que los apelantes desde el inicio carecían de una reclamación que justificara la concesión de un remedio en cuanto a CIMA.

De lo anterior surge que la falta de nexo causal entre CIMA y los daños reclamados en la demanda, era verificable mediante un análisis del informe pericial rendido por el doctor Gratacós desde el 6 de mayo de 2021. Lo cierto es que, en vez de desistir una vez rendido el referido informe, los apelantes mantuvieron a CIMA en el pleito, ocasionándoles las molestias y gastos que conllevó defenderse del litigio desde la radicación de la demanda. Sin duda los apelantes fueron temerarios al mantener a CIMA innecesariamente en el litigio por cuatro años, y solicitar un desistimiento condicionado a la celebración de una vista de autorización judicial, cuando al menos desde la fecha en que se rindió el informe, los apelantes conocían la falta de nexo causal entre CIMA y los daños reclamados.

Así pues, luego de un análisis ponderado del caso, concluimos que el TPI actuó correctamente al imponer a los apelantes honorarios por temeridad. Cabe señalar que el foro de instancia fundamentó detalladamente las razones por las cuales emitió dicha determinación. En específico, el TPI destacó que la conducta obstinada y temeraria de los apelantes obligó a CIMA a defenderse por un periodo de cuatro (4) años, a pesar de que conocían que no había nexo causal. En ausencia de abuso de discreción, no estamos en posición de revocar dicha determinación. Por tanto, y no existiendo razón válida alguna para variar la determinación discrecional de temeridad tomada por el foro primario, este Tribunal

resuelve que procedía la cuantía impuesta a los apelantes en concepto de honorarios de abogado.

Por lo anteriormente expuesto, concluimos que el foro primario actuó correctamente al desestimar con perjuicio la demanda en cuanto a CIMA, denegar la solicitud de desistimiento con perjuicio presentada por los apelantes, e imponerles a estos honorarios de abogado por temeridad. Por consiguiente, se confirma la *Sentencia Parcial* apelada.

### IV.    Parte dispositiva

Por los fundamentos que anteceden, los cuales se hacen formar parte de la presente sentencia, se confirma el dictamen apelado.

Notifíquese.

Lo acuerda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Adames Soto emite voto disidente.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| GLENDALIZ MERCADO SOTO Y OTROS<br><br>Parte Apelante<br><br>v.<br><br>GROUP PEDIATRIX MEDICAL, ET ALS<br><br>Parte Apelada<br><br><br>GLENDALIZ MERCADO SOTO Y OTROS<br><br>Parte Apelante<br><br>v.<br><br>DR. FRANCISCO ZAMORA ECHEVARRIA<br><br>Parte Apelada | TA2025AP00643 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Mayagüez<br><br><br><br>Civil núm.: MZ2020CV00675 consolidado con MZ2021CV01173<br><br><br>Sobre: Impericia Médica |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

### VOTO DISIDENTE DEL JUEZ NERY E. ADAMES SOTO

Son dos las razones que me impulsan muy respetuosamente a disentir del curso decisorio adoptado por el Panel al cual estoy adscrito. Primero, porque, tal cual lo afirmó la parte apelante de epígrafe en sendas mociones presentadas ante el Tribunal de Primera Instancia[1] (TPI), tengo muy claro que la denominada *Moción solicitando desestimación* instada por Cima HMO Corp. (CIMA), supuestamente al amparo de la Regla 10.2 de las de Procedimiento Civil[2], (*Moción de desestimación*), **no** era una moción de desestimación bajo la regla procesal citada, sino que se trataba en



---

[1] Mociones del 14 de octubre y 4 de noviembre de 2025, entradas número 451 y 461 de SUMAC, respectivamente.
[2] Entrada Núm. 443 de SUMAC.

rigor de una moción de sentencia sumaria bajo la Regla 36 de Procedimiento Civil, *infra,* que incumplió con los requerimientos de esta última regla para poder ser considerada, por lo que debió ser desestimada de plano. Segundo, porque, visto el tracto procesal de manera integral, aprecio abuso de discreción del foro apelado al adjudicarle temeridad a la parte aquí apelante.

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, establece que una parte demandada puede presentar una moción de desestimación alegando las defensas siguientes: "(1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; **(5) dejar de exponer una reclamación que justifique la concesión de un remedio**, y (6) dejar de acumular una parte indispensable". (Énfasis provisto). *Costas Elena v. Magic Sport,* 213 DPR 523, 534 (2024); *González Méndez v. Acción Social et al.,* 196 DPR 213, 234 (2016). Al resolver una solicitud de desestimación fundamentada en que se deja de exponer una reclamación que justifique la concesión de un remedio, **los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente**. *Costas Elena v. Magic Sport,* supra; *Eagle Security v. Efrón Dorado et al.,* 211 DPR 70, 73 (2023).

Sin embargo, una denominada "moción para desestimar por no aducir hechos que justifiquen la concesión de un remedio", **debe ser considerada como una moción de sentencia sumaria, si cualquiera de las partes somete documentos exógenos a las alegaciones, ya sea con la moción** o su oposición al Tribunal. J.A. Cuevas Segarra, **Tratado de Derecho Civil**, 2da. Ed., Tomo II, Publicaciones JTS, pág. 537. (Énfasis y subrayado provistos). En la misma tónica, la conversión de una moción de desestimación a una

de sentencia sumaria puede ocurrir cuando cualesquiera de las partes, el promovente o el promovido, **someten materia que no formó parte de las alegaciones, tales como: deposiciones, admisiones, certificaciones y contestaciones a interrogatorios.** *Torres Capeles v. Rivera Alejandro*, 143 DPR 300 (1997).

Basta una sola lectura de la denominada *Moción de desestimación* instada por CIMA para percatarse de que en esta expresamente **se incluyó materia que no formó parte de las alegaciones de la Demanda para establecer unos hechos esenciales como incontrovertidos. Más aún, CIMA se valió de documentos exógenos a las alegaciones, (contestación a requerimiento de admisiones e interrogatorios productos del descubrimiento de prueba), para establecer el hecho material que propuso como incontrovertido y justificaba acoger la desestimación solicitada**, veamos.

La alegación principal de CIMA para solicitar la desestimación de la causa de acción en su contra fue la afirmación de que **el Dr. Zamora Echevarría no era empleado, agente, ni contratista suyo**, y esto lo libraba de toda responsabilidad por los actos alegados. En la llamada *Moción de desestimación* CIMA aseveró que tal hecho quedó establecido ***mediante la contestación a requerimiento de admisiones e interrogatorio cursado por la parte demandante a CIMA, con fecha del 23 de marzo de 2022 en sus acápites número 3, 4,5,6, 26 y 32 del requerimiento de admisiones y en las 18 a la 20 de la contestación a interrogatorios.***[3]

Aunque a este punto ya no resulte necesario resaltarlo, es más que evidente que **CIMA no descansó en las solas alegaciones contenidas en la Demanda para establecer el hecho**

---

[3] Entrada Núm. 443 de SUMAC, pág. 7.

**principalísimo sobre su falta de relación con el Dr. Zamora, sino que se valió de prueba exógena a tales alegaciones para persuadir al foro primario de que se trataba de un hecho incontrovertido**. Es decir, solo a través de la prueba documental exógena a las alegaciones incluidas por CIMA, se podía abordar y determinar que el Dr. Zamora no tuviera relación contractual alguna con CIMA.

Lo descrito en el párrafo que precede necesariamente apartó la moción dispositiva instada por CIMA de su consideración bajo los supuestos de la Regla 10.2 de Procedimiento Civil, supra, colocando su evaluación propiamente dentro de los requisitos que ordena la Regla 36 de Procedimiento Civil, supra. Entendida así, **para que el Tribunal hubiese estado en posición de considerar la referida moción**, CIMA **tenía que atenerse y cumplir con los rigores que le impone la Regla 36.3(a) de Procedimiento Civil,** 32 LPRA Ap. V, **a la parte promovente de dicha moción.** Contrario a ello, simplemente tal moción no cumplió con los requisitos allí dimanantes, careciendo de una relación concisa y organizada en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hubiese controversias sustanciales, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos. Además, la falta de identificación adecuada de la moción presentada por CIMA como una de sentencia sumaria privó al aquí apelante de presentar debida oposición, según lo requiere la Regla 36.3(b) de Procedimiento Civil, 32 LPRA Ap. V.

En conclusión, juzgo que el TPI debió desestimar de plano la moción presentada por CIMA o, como mínimo, permitirle a la parte apelante oponerse en sus méritos a ella.

Por otra parte, pero íntimamente relacionado con lo hasta aquí discutido, también estoy convencido de que el TPI abusó de su discreción al imponerle temeridad a la parte apelante. Es de ver que, si CIMA estaba convencido de que por las meras alegaciones de la Demanda cabía desestimar, según así lo provee la Regla 10.2 de Procedimiento Civil discutida, **podía haberlo planteado desde la fecha misma en que fue presentada la Demanda, 31 de julio de 2020, para lo que no tenía que esperar el final del proceso de descubrimiento de la prueba**. Más aún, si CIMA disponía de documentación para establecer la falta de toda relación de dicha corporación con el Dr. Zamora, la Regla 36.2 de Procedimiento Civil, 32 LPRA Ap. V, le permitía presentar una moción de sentencia sumaria a tales efectos **a partir de la fecha en que fue emplazado**, pero, por alguna razón que no me explico, esperó a presentar su moción dispositiva pasados más de cinco años de presentada la Demanda.

Por las razones que preceden, muy respetuosamente disiento.

En San Juan, Puerto Rico, a 2 de enero de 2026.

Nery Enoc Adames Soto
Juez de Apelaciones